STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Miguel E. MARINEZ, Jr.,
Defendant-Appellant.

Supreme Court

*No. 2009AP567–CR. Oral argument November 2, 2010.*
*—Decided February 23, 2011.*

2011 WI 12

(Also reported in 797 N.W.2d 399.)

For the plaintiff-respondent-petitioner there were briefs by *Rebecca Rapp St. John,* assistant attorney

general with whom on the briefs was *J.B. Van Hollen,* attorney general. The cause was argued by *Rebecca Rapp St. John.*

For the defendant-appellant was a brief and oral argument by *Ralph J. Sczygelski* and *Sczygelski & Pangburn Law Firm, LLC,* Manitowoc.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished decision of the court of appeals[1] regarding the admissibility of other-acts evidence referenced in an otherwise-admissible videotaped statement of a child victim. In the videotaped forensic interview, the then four-year-old alleged victim, M.M.L., disclosed that she was sexually assaulted by the defendant, Miguel E. Marinez, Jr. (Marinez). During this interview, M.M.L. also referred to a separate incident in which Marinez burned her hands with hot water. Marinez had already been convicted of child abuse for that assault before this interview took place. After M.M.L. brought up the hand-burning incident, the interviewer referred to that incident in an attempt to ascertain when the sexual assault occurred in relation to that event. M.M.L.'s statements about the hand-burning incident also served to demonstrate that "Mikey," M.M.L.'s name for Marinez, perpetrated both acts. M.M.L. also referred to the hand-burning incident at other points during the videotaped interview.

¶ 2. In preparation for Marinez's trial for the sexual assault of M.M.L., the State moved to admit this video interview under Wis. Stat. § 908.08 (2007–08)[2] and the references to the hand-burning incident within

---

[1] *State v. Marinez,* No. 2009AP567–CR, unpublished slip op. (Wis. Ct. App. Mar. 18, 2010).

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

the video under Wis. Stat. § 904.04(2)(a). The Jefferson County Circuit Court, the Honorable Randy R. Koschnick presiding, admitted the video in its entirety, concluding that the other-acts evidence it contained was admissible under Wis. Stat. § 904.04(2)(a)[3] for the purposes of identity and context, and including within context, the time and location of the assault, and in order to assist the jury in assessing M.M.L.'s credibility. To prevent unfair prejudice to Marinez, the circuit court limited the details of the hand-burning incident that the State could present and also gave a cautionary instruction to the jury. Marinez was convicted, and he appealed, arguing that the circuit court erred in admitting the other-acts evidence relating to the hand-burning incident. The court of appeals reversed the circuit court's judgment of conviction after concluding that the other-acts evidence was erroneously admitted and the error was not harmless. The State petitioned this court for review, which we granted. In its petition, the State presented the following issue for review: whether the circuit court erroneously exercised its discretion in admitting M.M.L.'s videotaped statements without excising the references to the separate hand-burning incident perpetrated by Marinez.

¶ 3. We hold that the circuit court did not err in admitting the video in its entirety under Wis. Stat. §§ 904.04(2)(a) and 908.08. We affirm the circuit court's evidentiary ruling on the admissibility of the other-acts

---

[3] The relevant portion of this statute provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." Wis. Stat. § 904.04(2)(a).

evidence because the circuit court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Hunt,* 2003 WI 81, ¶ 34, 263 Wis. 2d 1, 666 N.W.2d 771.

¶ 4. We conclude that in light of the greater latitude rule and the fact that the other-acts evidence was so intertwined with the otherwise admissible videotaped statement of the child victim, the circuit court properly determined that each of the three prongs of the *Sullivan* analysis supported admission. *See State v. Sullivan,* 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998). Under the first prong, we conclude that the circuit court reasonably concluded that, under Wis. Stat. § 904.04(2)(a), the hand-burning references were admissible for the proper purposes of establishing M.M.L.'s identification of Marinez as her abuser and providing context, including assisting the jury in assessing M.M.L.'s credibility, establishing the time and location of the sexual abuse, and providing a complete story to the jury. Regarding the second prong, we conclude that the circuit court's determination—that the hand-burning evidence was relevant to establish M.M.L.'s identification of Marinez, and the time and location of the sexual abuse, to provide context, including regarding M.M.L.'s credibility, and to provide a more complete story to the jury—was reasonable, pursuant to Wis. Stat. § 904.01. Under the third prong, we conclude that the circuit court reasonably determined that, in accord with Wis. Stat. § 904.03, the probative value of the entire video, including M.M.L.'s references to the hand-burning incident, was not substantially outweighed by the danger of unfair prejudice to Marinez.

¶ 5. We are also satisfied that any misuse of the hand-burning evidence by the prosecutor did not "so

infect[] the trial with unfairness as to make the result-ing conviction a denial of due process." *See* State v. Mayo, 2007 WI 78, ¶ 43, 301 Wis. 2d 642, 734 N.W.2d 115. Thus, we reverse the court of appeals and affirm the circuit court's judgment of conviction.

## I. FACTUAL BACKGROUND

¶ 6. In 2005, Marinez married M.M.L.'s mother, Rachel Marinez (Rachel) and became M.M.L.'s stepfa-ther. The Marinez family, including M.M.L. and two of her brothers, Evan and Aiden, lived in Watertown, Wisconsin, from October through December of 2006. In this home, Evan and Aiden shared a bedroom, and M.M.L. slept in a separate bed in her parents' room. During this period, M.M.L. was subjected to physical abuse and also alleged sexual abuse at the hands of Marinez. Because of the severity of the physical abuse, which required extended hospitalization for severe burns to her hands, M.M.L.'s family and law enforce-ment were aware of that abuse immediately after it happened.[4] The alleged sexual abuse came to light some time after the hand-burning incident occurred.

¶ 7. On December 27, 2006, when M.M.L. was four years old, Marinez severely burned her hands by holding them under extremely hot water, injuring her so severely that M.M.L. was hospitalized for some time. As a result, Marinez was arrested on December 28, 2006, and later convicted of intentional child abuse which creates a high probability of great bodily harm,

---

[4] M.M.L.'s mother, Rachel, testified that M.M.L. was taken to the hospital on December 27, 2006, after the hand-burning incident took place and remained hospitalized for some time. Detective Brower testified that he went to the hospital on December 27, 2006, to investigate the physical abuse of M.M.L.

contrary to Wis. Stat. § 948.03(2)(c).[5] After this incident, M.M.L. lived with her father in Madison, Wisconsin, and Marinez apparently no longer had contact with her.

¶ 8. Approximately six months later, on June 25, 2007, during a forensic interview by Kari Orn (Orn) at Safe Harbor Child Advocacy Office (Safe Harbor) in Madison, Wisconsin, M.M.L. disclosed that Marinez had also sexually abused her when they lived together in Watertown, Wisconsin.[6] Orn videotaped this interview, which took place when M.M.L. was four years old. M.M.L. revealed that, on at least one occasion, "Mikey," which is what she called Marinez, instructed her to take off her clothes and lie on her parents' bed, after which he touched what she called her "private area" with his hand.

¶ 9. M.M.L. provided only limited details about the sexual abuse. She described one particular incident,[7] which happened while her mother was at work and Evan and Aiden were playing together in their room. M.M.L. stated that after she had taken a bath and gotten dressed, "Mikey" told her to take off her

---

[5] The relevant portion of this statute provides:

(2) Intentional causation of bodily harm.

(c) Whoever intentionally causes bodily harm to a child by conduct which creates a high probability of great bodily harm is guilty of a Class F felony.

Wis. Stat. § 948.03(2)(c).

[6] The record does not indicate why M.M.L. was brought to Safe Harbor for the interview.

[7] In the interview, M.M.L. disclosed that "Mikey" touched her private area "[m]ore than one time," though she provided the details of only one particular incident, which is the incident underlying the charge in this case.

clothes and lie on the bed that Marinez and Rachel shared. She stated that he kept his clothes on and touched her private area with his hand. M.M.L. also stated that neither she nor Marinez said anything while he was touching her. At Orn's request, M.M.L. drew a picture of where she and Marinez were when this took place. In response to one of Orn's questions, M.M.L. also spontaneously brought up the hand-burning incident, indicating that "Mikey" was the person who burned her hands. Orn used this hand-burning incident to try to establish when the sexual abuse occurred, but M.M.L. was unable to recall which happened first, the physical or sexual abuse.

¶ 10. Additional details about the assault could be inferred from M.M.L.'s statements when considered along with other known facts. Her description of the living arrangements at the time this took place, when M.M.L., Marinez, Rachel, Evan, and Aiden lived together and Evan and Aiden shared a room, indicated that the sexual abuse occurred when they lived in Watertown, Wisconsin. M.M.L. was unable to remember when this happened, but given her description of the living arrangements, it was limited to the period during which the Marinez family lived in Watertown, Wisconsin, from October through December of 2006. M.M.L. identified Marinez as the person who sexually assaulted her because, while she simply called him "Mikey," she stated elsewhere in the video that "Mikey" was also the person who burned her hands and was married to her mother, thus identifying "Mikey" as Marinez.

## II. PROCEDURAL HISTORY

¶ 11. As a result of M.M.L.'s allegations, Marinez was charged on November 21, 2007, with sexual contact

with a child under the age of thirteen contrary to Wis. Stat. § 948.02(1).[8] Given M.M.L.'s age—she was five years old at the time of the hearing—the State sought to admit the video of her interview with Orn under Wis. Stat. § 908.08[9] in lieu of having her testify in court about the details of this incident. The State moved to admit the other-acts evidence referenced in the video regarding the hand-burning incident under Wis. Stat. § 904.04(2)(a). During the motion hearing, the State argued that such evidence was admissible for the purposes of establishing the time and location of the alleged assault, explaining M.M.L.'s identification of Marinez, providing context, and allowing the jury to better assess M.M.L.'s credibility.

¶ 12. Marinez objected to the admission of the sections of the videotape that refer to the hand-burning incident. Marinez addressed each of the purposes for which the State sought to admit the hand-burning references. Marinez argued that M.M.L.'s identification of who assaulted her could be established by her other statements in the interview and Detective David

---

[8] The relevant portion of this statute provides:

(1) First degree sexual assault.

(e) Whoever has sexual contact with a person who has not attained the age of 13 years is guilty of a Class B felony.

Wis. Stat. 948.02(1)(e).

[9] In relevant part, this statute provides an exception to the hearsay rule:

(1) In any criminal trial or hearing, juvenile fact-finding hearing under s. 48.31 or 938.31 or revocation hearing under s. 302.113(9)(am), 302.114(9)(am), 304.06(3), or 973.10(2), the court or hearing examiner may admit into evidence the audiovisual recording of an oral statement of a child who is available to testify, as provided in this section.

Wis. Stat. § 908.08(1).

Brower's[10] verification of who lived with M.M.L.'s mother during this period. He also argued that this separate hand-burning incident was not related enough to the sexual assault to provide any context or to assist the jury in assessing M.M.L.'s credibility. Marinez further argued that, instead, the State was actually seeking to admit the hand-burning evidence to establish a "pattern of complete truth telling" by M.M.L. to boost her credibility, which, he argued, is prohibited by *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967). Regarding context, Marinez asserted that other-acts evidence is admissible to provide context only to show the "context of the crime itself, not supporting a victim's statement about the crimes themselves." He argued that the hand-burning references could not provide context because that incident was entirely unrelated to the sexual assault and the two events did not occur contemporaneously. Finally, Marinez asserted that the time frame of the sexual assault would be adequately established by Detective Brower's investigation and testimony and M.M.L.'s other statements in the video.[11]

---

[10] Detective Brower investigated both the physical and sexual assault of M.M.L. He also testified at the preliminary hearing and at trial in this case.

[11] Initially, Marinez sought to enter into a stipulation regarding the time frame of the alleged assault to avoid the admission of the hand-burning references to establish when the assault could have occurred. The State noted that there were other purposes for which the hand-burning references were admissible and thus declined to enter into a stipulation for that purpose. The circuit court did accept a stipulation that Marinez did not have any contact with M.M.L. after the hand-burning incident for the purposes of excluding any evidence that Marinez had been in continuous custody since then for the charge and conviction related to that incident. After accepting the stipulation, the circuit court directed Marinez's counsel to

Turning to the danger of unfair prejudice to Marinez, he asserted that the probative value of this evidence was low and that there was a very high risk of unfair prejudice to him. Marinez argued that the State lacked any physical evidence or a confession, and thus the inflammatory nature of M.M.L.'s references to the hand-burning would unduly prejudice Marinez.

¶ 13. The circuit court admitted the hand-burning references in the video because it concluded that the State offered that evidence for proper purposes under Wis. Stat. § 904.04(2)(a), for which this evidence was relevant and not unduly prejudicial. Noting that M.M.L. was a very young child, five years old at the time of the motion hearing and the trial, the circuit court stated that the greater latitude rule strengthened its conclusion that this evidence was admissible for these purposes. The circuit court also minimized the risk of unfair prejudice to Marinez by giving a cautionary instruction to the jury, limiting the admission of details about the hand-burning incident, and prohibiting the State's witnesses from dwelling on the hand-burning incident.[12]

¶ 14. The jury found Marinez guilty of sexual contact with a child under the age of thirteen contrary to Wis. Stat. § 948.02(1). Marinez appealed, arguing that the circuit court's admission of the hand-burning

---

address each of the state's grounds for admitting the other-acts evidence including "identity, the time frame to establish the date of the alleged violation and venue, as well as context as it relates to credibility."

[12] Marinez's counsel also asked whether the State's witnesses would be permitted to testify about the hand-burning incident under the circuit court's ruling. The circuit court clarified that other witnesses would be permitted to mention the hand-burning incident only within the limits of its ruling and would not be allowed to bring up extraneous details or dwell on the incident.

evidence was an erroneous exercise of discretion. Marinez also argued that the State exceeded the limits placed on the admission of the hand-burning evidence while questioning witnesses and during closing arguments. The State responded that the circuit court properly admitted the other-acts evidence. Further, the State argued that it stayed within the circuit court's limitations for the use of the hand-burning evidence and that, in any event, Marinez forfeited any argument to the contrary by failing to object.

¶ 15. The court of appeals held that the circuit court erroneously admitted the hand-burning evidence because it was not admitted for a proper purpose under Wis. Stat. § 904.04(2)(a) and that such error was not harmless. *Marinez,* No. 2009AP567–CR, ¶¶ 17, 25. While the court of appeals stated that context and credibility were proper purposes for which to admit other-acts evidence in certain circumstances, it concluded that the hand-burning evidence was not properly admitted for those purposes in this case, distinguishing *Hunt,* 263 Wis. 2d 1, ¶¶ 58–59, a case in which a defendant's prior drug use was properly admitted for the purposes of context and credibility. *Marinez,* No. 2009AP567–CR, ¶¶ 10–15. The court of appeals noted that even the application of the greater latitude rule could not overcome the lack of a proper purpose. *Id.,* ¶ 17. Further, the court of appeals concluded that the circuit court's error in admitting the other-acts evidence was not harmless because of how the State used that evidence, the fact that there was little actual evidence of the sexual abuse, and the likelihood that the hand-burning evidence influenced the jury improperly. *Id.,* ¶¶ 23–25. Since the court of appeals reversed the circuit court's judgment of conviction on this basis, it did not reach the question of whether the State ex-

ceeded the circuit court's limitations on the admission of the hand-burning evidence. *Id.*, ¶ 8. Therefore, the court of appeals reversed the circuit court's judgment of conviction.

## III. ANALYSIS

¶ 16. The State petitioned this court for review of the following issue, namely, whether the circuit court properly admitted M.M.L.'s videotaped interview without excision of the hand-burning references under Wis. Stat. § 904.04(2)(a). Since M.M.L. was five years old at the time of the motion hearing and the trial, the greater latitude rule, which provides for the more liberal admission of other-acts evidence in child sexual assault cases, applies in this case. *State v. Hammer,* 2000 WI 92, ¶ 23, 236 Wis. 2d 686, 613 N.W.2d 629. The three-prong analysis from *Sullivan* governs the propriety of admitting other-acts evidence under Wis. Stat. § 904.04(2)(a) and the greater latitude rule applies to our review of each prong. *Sullivan,* 216 Wis. 2d 768, ¶¶ 5–8; *Hammer,* 236 Wis. 2d 686, ¶ 23. Additionally, while Marinez did not directly petition this court for review of his claim that the State exceeded the order admitting the hand-burning evidence, we will address his arguments in this regard as an allegation of prosecutorial misconduct. *See Mayo,* 301 Wis. 2d 642, ¶ 43.

■■■■

¶ 17. We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion. *Hunt,* 263 Wis. 2d 1, ¶ 34. We will uphold a circuit court's evidentiary ruling if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach." *Id.* Even if a circuit court

fails to set forth the basis for its ruling, we will nonetheless independently "review the record to determine whether it provides an appropriate basis for the circuit court's decision." *Id.* Here, the circuit court thoroughly articulated its reasons for admitting the hand-burning evidence.

### A. General Principles Regarding the Admissibility of Other-Acts Evidence

¶ 18.　Several overlapping rules and principles govern the admissibility M.M.L.'s videotaped interview generally and the hand-burning evidence more specifically. When child witnesses are available for cross examination, Wis. Stat. § 908.08 allows for the admission of videotaped child witness interviews that meet certain requirements. *See* Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 808.1 (3d ed. 2008). Marinez did not and does not challenge the admissibility of the video itself, but rather the references to the hand-burning incident within the video and other witnesses' testimony regarding the hand-burning incident. Wisconsin Stat. § 904.04(2)(a) prohibits the admission of evidence of a defendant's other bad acts to show that the defendant has a propensity to commit crimes. However, other-acts evidence that is offered for a purpose other than the prohibited propensity purpose is admissible if it is relevant to a permissible purpose and is not unfairly prejudicial. Wis. Stat. § 904.04(2)(a); *Sullivan,* 216 Wis. 2d at 783. Wisconsin Stat. § 904.04(2)(a) contains an illustrative, and not exhaustive, list of some of the permissible purposes for which other-acts evidence is admissible, none of which applies here.[13]

---

[13] The circuit court stated that one of the purposes for which it admitted the other-acts evidence was identity; how-

¶ 19. To guide courts in determining whether other-acts evidence is admissible for a proper purpose under Wis. Stat. § 904.04(2)(a), we developed a three-prong test. *Sullivan,* 216 Wis. 2d at 772–73. Other-acts evidence is properly admissible (1) if it is offered for a permissible purpose, other than the prohibited propensity purpose, pursuant to Wis. Stat. § 904.04(2)(a), (2) if it is relevant under the two relevancy requirements in Wis. Stat. § 904.01,[14] and (3) if its probative value is not substantially outweighed by the risk or danger of unfair prejudice under Wis. Stat. § 904.03. *Sullivan,* 216 Wis. 2d at 772–73. The party seeking to admit the other-acts evidence bears the burden of establishing that the first two prongs are met by a preponderance of

ever, it was not actually offered for identity as that term is used in Wis. Stat. § 904.04(2)(a). As explained in more detail below, *see infra,* ¶ 25 n.17, identity, within the meaning of Wis. Stat. § 904.04(2)(a), relates to a defendant's signature or imprint that would allow the perpetrator of a crime in a particular case to be identified through his modus operandi in connection to a separate crime he was known to have committed. Blinka, *supra* § 404.7 at 212–13. In this case, the State sought to admit M.M.L.'s references to the hand-burning incident to provide a full explanation of her identification of Marinez via her reference to "Mikey" as the perpetrator of both assaults when it had been established that Marinez burned M.M.L.'s hands.

[14] Wisconsin Stat. § 904.01 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Wis. Stat. § 904.01, evidence is relevant if it (1) "relates to a fact or proposition that is of consequence to the determination of the action" and (2) "has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." *Sullivan,* 216 Wis. 2d at 785–86.

the evidence. *State v. Payano,* 2009 WI 86, ¶¶ 63, 68 n.14, 320 Wis. 2d 348, 768 N.W.2d 832; *Hunt,* 263 Wis. 2d 1, ¶ 53. Once the proponent of the other-acts evidence establishes the first two prongs of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice. *Hunt,* 263 Wis. 2d 1, ¶ 53; *Payano,* 320 Wis. 2d 348, ¶ 80.

¶ 20. Because this is a child sexual assault case with a young victim, the greater latitude rule "permit[s] 'a more liberal admission of other crimes evidence.'" *State v. Davidson,* 2000 WI 91, ¶ 44, 236 Wis. 2d 537, 613 N.W.2d 606; *Hammer,* 236 Wis. 2d 686, ¶ 23. This more liberal evidentiary standard applies to each prong of the *Sullivan* analysis.[15] *Hammer,* 236 Wis. 2d 686, ¶ 23. The greater latitude rule "does not relieve the court of the duty to ensure that the other-acts evidence is offered for a proper purpose," *Hunt,* 263 Wis. 2d 1, ¶ 87, but it does support the admission of such evidence if it can be used for a purpose not prohibited under Wis. Stat. § 904.40(2)(a), *see Hammer,* 236 Wis. 2d 686, ¶ 23.

B. The *Sullivan* Analysis

¶ 21. Under these guidelines we now turn to whether the circuit court erroneously exercised its discretion in admitting the hand-burning references within the videotaped interview.

---

[15] A more liberal standard applies in child sexual assault cases because of "the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in such cases." *Davidson,* 236 Wis. 2d 537, ¶ 42. Another reason for this rule, which is particularly relevant in this case, "is the need to corroborate the victim's testimony against credibility challenges." *Id.,* ¶ 40.

1. Was the evidence offered for a permissible purpose?

¶ 22. The circuit court admitted the other-acts evidence for two main purposes: identity and context. Regarding identity, the circuit court explained that M.M.L.'s statements in the video regarding the hand-burning incident established her identification of Marinez as the person who sexually abused her. M.M.L.'s videotaped statements identified "Mikey" as the person who both sexually assaulted her and burned her hands. These statements, together with evidence that she called Marinez "Mikey" and evidence that Marinez burned M.M.L.'s hands, established M.M.L.'s identification of Marinez as the person who sexually assaulted her. The circuit court explained:

> The alleged victim refers to the defendant as "Mikey" or "Mikey-Miguel," and when she is talking to the child interviewer in the videotape interview, she is describing Mikey as being the person who burned her hands, and she clearly describes the person who burned her hands as the same person who touched her private spot, all within the context of a family residential setting. And so it is probative of identity. It identifies the defendant as the same perpetrator of both abusive acts.
>
> A jury otherwise might have difficulty determining, even if they believe the girl was sexually assaulted, whether this defendant is the one who assaulted her. And so the linkage between the hand burning and the sexual assault claim is that [M.M.L.] clearly is attempting to tell us that the defendant is the same person who committed both of those acts. And so it's admissible for the identity purpose, as well.

Within context, the circuit court included the purposes of establishing the time and location of the assault,

587

providing a complete explanation of the case, and enhancing M.M.L.'s credibility. The circuit court stated:

> I think context in this case includes the date. And we have a young child. She is five years old. I believe. Sometimes it's difficult for young children to pin down a date that an event occurred, especially a difficult event like this. The location, as far as which house they lived in, and whether it was in Jefferson County when the crime was allegedly committed as part of the context.
>
> The hand burning incident also enhances [M.M.L.'s] credibility, because the hand burning incident has now been established, I think beyond dispute, that the defendant has been convicted of perpetrating that act of abuse against [M.M.L.]. She complained of it and was examined at a hospital, and that hand burning incident happened within a period of 90 days or less, going back possibly as early as the beginning of October, according to the charged time frame in the Information in this case. And that does provide additional credibility for [M.M.L.'s] story, if the jury believes her testimony overall. It doesn't necessarily establish, to a certainty, that she is telling the truth, but it is certainly relevant to her credibility, and that's something that the jury, obviously, has to deal with.

¶ 23. The State focuses on three main purposes for which the other-acts evidence was admissible: credibility, completeness, and context. Credibility, the State argues, has already been recognized as an acceptable purpose for which to admit other-acts evidence in *Hunt,* 263 Wis. 2d 1. The State argues that playing the video as a whole, including the hand-burning references, helped the jury assess M.M.L.'s credibility. This additional information was critical from the State's standpoint because of the difficulties children have in remembering and relaying the details required to garner

a conviction, and other difficult proof issues that exist in child sexual assault cases. The State notes that the purpose of the greater latitude rule is to address these proof problems in child sexual assault cases and to help the jury evaluate the child's credibility. Given these unique challenges, the State argues that removing references to other-acts evidence that a child wove into her videotaped statement would have seriously affected the jury's ability to assess the child's credibility and would have hampered the State's ability to prove the elements of the assault. The State also asserts that the hand-burning references "helped pinpoint the timing and perpetrator of the sexual assault."[16]

¶ 24. In response, Marinez argues that the circuit court failed to fully explain its reasoning and admitted the hand-burning evidence for improper purposes. Distinguishing *Hunt,* Marinez asserts that this evidence is not properly admitted for context because the hand-burning incident was not so intertwined with the sexual assault as the other-acts evidence in *Hunt* was, and that the references in the video were easily excised. Further, Marinez argues that the State's argument amounts to an assertion that "a child's credible report of prior bad behavior makes the child's report of unrelated sexual

---

[16] At oral argument, the State clarified that it was not conceding that the circuit court erred by admitting the hand-burning evidence for the identity purpose. The State clarified that the evidence was not offered for identity as that term is commonly used with regard to a common imprint or modus operandi between the other act and the crime at issue since that is obviously not present in this case. Rather, the State asserted that the hand-burning evidence provided the complete picture of M.M.L.'s identification of Marinez, whom she referred to as "Mikey," as the perpetrator of both acts, which established M.M.L.'s actual identification of Marinez as her abuser.

assault behavior more credible." Marinez asserts that this is not how the other-acts evidence in *Hunt* was used to establish the victim's credibility and is not a permissible way to use such evidence. Marinez insists that other-acts evidence cannot be used to establish M.M.L.'s credibility because such use makes it character evidence, prohibited by Wis. Stat. § 904.04(1) when it is used to establish that M.M.L. has a truthful character.

¶ 25. This first step in the *Sullivan* analysis is not demanding. *Payano,* 320 Wis. 2d 348, ¶ 63. Identifying proper purposes for the admission of other-acts evidence is largely meant to develop the framework for the relevancy determination. *See Payano,* 320 Wis. 2d 348, ¶ 63; Blinka, *supra,* § 404.6 at 180. The purposes for which other-acts evidence may be admitted are "almost infinite" with the prohibition against drawing the propensity inference being the main limiting factor. Blinka, *supra,* § 404.6 at 173 n.10; *see also Sullivan,* 216 Wis. 2d at 783 ("Although Wis. Stat. § (Rule) 904.04(2) precludes the admission of character or propensity evidence, it permits the admission of other acts evidence if its relevance does not hinge on an accused's propensity to commit the act charged."). "The proponent need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct." Blinka, *supra,* § 404.6 at 180. As long as the State and circuit court have articulated at least *one* permissible purpose for which the other-acts evidence was offered and accepted, the first prong of the *Sullivan* analysis is met. *See Hammer,* 236 Wis. 2d 686, ¶ 29 n.4.

¶ 26. Applying these principles to our review of the circuit court's decision, we conclude that the circuit

court reasonably concluded that the hand-burning evidence was admissible for the purposes of establishing M.M.L.'s identification of Marinez[17] and to provide

[17] Although we discussed previously the State's position on identity, we now note our agreement with the State's assertion at oral argument that the hand-burning evidence was not offered for the traditional identity purpose, that is, to identify the defendant as the perpetrator of the other act and the act for which he is on trial by providing evidence of his signature at each crime. *See* Blinka, *supra,* § 404.7 at 212–13. Thus, the stricter requirements specifically applicable to that purpose are not relevant here. *See* Blinka, *supra,* § 404.7 at 212–15; *State v. Scheidell,* 227 Wis. 2d 285, 301, 595 N.W.2d 661 (1999). To clarify, the hand-burning references are admissible to fully explain how M.M.L. identified Marinez as the person who sexually abused her by accusing "Mikey" of both the physical and sexual assaults. While the circuit court's decision did not distinguish between the traditional identity purpose and the purpose for which the hand-burning references were used, any error was harmless because the circuit court's decision was not made in the jury's presence. *See Hunt,* 263 Wis. 2d 1, ¶ 57.

Additionally, the circuit court gave the following modified version of the pattern jury instruction for the typical "identity" purpose: "That is whether the person [M.M.L.] described as burning her hands, is one in the same person who sexually assaulted her, such that it tends to identify the defendant as the one who committed the offense charged." See Wis—JI Criminal 275 (providing the following pattern jury instruction for identity, "that is, whether the prior conduct of the defendant is so similar to the offense charged that it tends to identify the defendant as the one who committed the offense charged") (emphasis added). This allowed the jury to use the other-acts evidence for the permissible purpose of establishing M.M.L.'s identification of Marinez and did not rely on similarities between the two bad acts such that the additional requirements of the "identity" purpose would apply. *See State v. Fishnick,* 127 Wis. 2d 247, 264 n.7, 378 N.W.2d 272 (1985) ("In order for other-acts evidence to be admitted for purposes of identity,

591

context for M.M.L.'s statements. Within context, the circuit court properly admitted this evidence to provide a more complete story of the sexual assault, including the time and location of the assault, as well as to provide greater information from which the jury could assess M.M.L.'s credibility.[18] None of these purposes relies on the prohibited propensity inference of the defendant's character to commit crimes, and thus they are legally permissible purposes under the first prong of the *Sullivan* analysis and Wis. Stat. § 904.04(2)(a).

---

there should be such a concurrence of common features and so many points of similarity between the other acts and the crime charged that it can reasonably be said that the other acts and the present act constitute the imprint of the defendant.").

[18] Marinez mischaracterizes the credibility purpose for which the hand-burning evidence was admitted when he asserts that M.M.L.'s references to the hand-burning incident become character evidence inadmissible under Wis. Stat. § 904.04(1) when used for this purpose. Character evidence is defined as "evidence regarding someone's personality traits; evidence of a person's moral standing in a community, based on reputation or opinion." *Black's Law Dictionary* 576 (7th ed. 1999). The circuit court did not admit M.M.L.'s truthful account of the hand-burning incident to show that M.M.L. had an honest character, which would not be a permissible use of this evidence here. It is true that some of the circuit court's exchanges with counsel at the motion hearing could be construed as a mistaken belief that the hand-burning evidence was admissible to corroborate M.M.L.'s allegations by establishing a pattern of truth-telling. However, its ruling admitting this evidence clarifies that it was not admitted for an improper character purpose. The circuit court admitted the hand-burning evidence as relevant to M.M.L.'s credibility under the umbrella of context, which explains the purpose for which it was admitted: to provide greater context to M.M.L.'s sexual assault allegation in order to allow the jury to better assess M.M.L.'s credibility and to provide a more complete story for the jury.

¶ 27. We have previously recognized that context, credibility, and providing a more complete background are permissible purposes under Wis. Stat. § 904.04(2)(a). *Hunt,* 263 Wis. 2d 1, ¶ 58. In *Hunt,* the victims and witnesses, Hunt's family members, made statements to police detailing Hunt's physical and sexual assaults, which were related to his drug use. *Id.,* ¶¶ 12, 15. As a result, Hunt was charged with multiple counts of sexual assault of his wife and step-daughter. *Id.,* ¶ 13. Later, the victims and witnesses recanted, and the State sought to admit their statements, which included other-acts evidence regarding Hunt's drug use and other instances of physical and sexual abuse of his family. *Id.,* ¶ 15. The State offered this other-acts evidence to provide greater context and background, to explain the victims' state of mind regarding why they recanted, to provide more information about the credibility of their statements, and as part of the corpus of Hunt's crimes. *Id.,* ¶¶ 15–17. The circuit court admitted the other-acts evidence for these purposes. We affirmed, concluding that "[o]ther-acts evidence is permissible to show the context of the crime, [] to provide a complete explanation of the case[,] . . . and to establish the credibility of victims and witnesses." *Id.,* ¶ 58.

¶ 28. The fact that the hand-burning evidence establishes context and credibility and provides a more complete story for the jury in a different way than the other-acts evidence in *Hunt* is inapposite, because it does not transform these purposes into prohibited propensity purposes. What matters is that *Hunt* established context and credibility as permissible purposes for which to admit other-acts evidence in certain circumstances. *Id.* Like in *Hunt,* the admission of other-acts evidence was appropriate because of the unique nature of this case. In a videotaped interview, M.M.L., a

593

very young child, wove this hand-burning incident into her account of the sexual abuse she suffered. The State's case rested entirely on M.M.L.'s videotaped allegations. The lack of physical evidence and the difficulty children have in testifying in court are common predicaments in child sexual assault cases, which is why the greater latitude rule is necessary. *Davidson,* 236 Wis. 2d 537, ¶ 42. Providing a complete story for the jury, additional context to M.M.L.'s allegations of sexual abuse, and more information with which the jury could assess M.M.L.'s credibility was critical in this case and justified the admission of the hand-burning evidence.[19]

¶ 29. We also note that other-acts evidence may have been admitted for a proper purpose even if we have not recognized that specific purpose as such in a previous case. This is true because other-acts evidence is admis-

---

[19] While its use was appropriate here, we recognize that context is a nebulous term that can be misused by prosecutors who seek refuge under this potentially broad umbrella because they cannot articulate a specific permissible purpose. For this reason, the United States Seventh Circuit Court of Appeals has sometimes criticized its corollary "inextricably intertwined" doctrine. *United States v. Taylor,* 522 F.3d 731, 734–35 (7th Cir. 2008) (criticizing the vagueness of the "inextricably intertwined" doctrine as inviting "prosecutors to expand the exceptions to the rule beyond the proper boundaries of the exceptions"); *United States v. Klebig,* 600 F.3d 700, 712–13 (7th Cir. 2009) (same). As explained above, given that M.M.L. tied this other-acts evidence into her videotaped allegations of sexual assault, which were presented to the jury instead of in-court testimony because of her young age, admitting the hand-burning references was necessary to provide context to M.M.L.'s videotaped allegations and to help the jury assess her credibility. Thus, while the concerns raised by the Seventh Circuit are legitimate, those concerns are not implicated in this case.

sible for any purpose except those purposes that draw the prohibited propensity inference regarding a defendant's character. *See* Wis. Stat. § 904.04(2)(a).[20] We now turn to whether the hand-burning references in the video and in other witnesses' testimony are relevant to these purposes.

 2. Was the hand-burning evidence relevant to those purposes?

██

¶ 30. The circuit court's analysis of the relevance of the hand-burning evidence to each of the above purposes was somewhat integrated into its analysis of

---

[20] In this regard the court of appeals erred by drawing distinctions between previous other-acts cases, including Hunt, and this case, and by concluding that the hand-burning references were easily excisable from the video. *Marinez,* No. 2009AP567–CR, ¶¶ 11–17. We emphasize that, as long as the circuit court fully articulated its reasoning, as the circuit court did in this case, we review only whether the circuit court erroneously exercised its discretion in admitting other-acts evidence for a proper purpose. *Hunt,* 263 Wis. 2d 1, ¶ 34. As noted above, a circuit court has properly exercised its discretion if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *Id.* A circuit court properly applies Wis. Stat. § 904.04(2)(a) and the first prong of the Sullivan analysis if it articulates a purpose, which is not the prohibited propensity inference, for which to admit the other-acts evidence. The circuit court has done so here. The circuit court considered Marinez's argument that the hand-burning references were excisable from the video but reasonably concluded that the State was permitted to admit the entire video as it articulated a proper purpose for which it sought to use the hand-burning evidence. As long as circuit courts reach a reasonable conclusion, we will not supplant their judgment with ours. *Id.,* ¶ 42.

whether that evidence was admissible for a proper purpose. To further explain its decision, the circuit court stated:

> Specifically, as to identity, it makes the likelihood greater that the defendant is the one who perpetrated the sexual assault, because the hand burning evidence corroborates the victim's claim of these two different instances of abuse. The prior bad act evidence concerning hand burning is relevant to prove that the sexual assault, in fact, happened because it helps the jury to understand the time frame when this incident may have occurred — the sexual assault, that is — it helps them to understand where it occurred; and the State is required to prove it happened in Jefferson County as part of this prosecution. It helps the jury to understand the case as a whole.
>
> In fact, the child may be somewhat fearful when she testifies at the trial. I assume she will be testifying in person, and this history of the hand burning by the defendant might also help the jury to understand the alleged victim's demeanor and appearance as she testifies in court.
>
> As we saw from the videotape interview as well, the hand burning is really an integral part of the history that the alleged victim provides, because she talks about the defendant being the same person as the one who burned her hands; she talks about whether the sexual assault happened the same day that the hand burning occurred, whether it was in the same room or house. She talks about the fact that her mother was gone when both incidents occurred. And so she is, in her own statement as we see on the videotape, describing one event in connection with the other, as far as time, location and perpetrator.
>
> So, the hand burning incident does provide a necessary background. It provides the necessary background for

understanding the defendant's behavior. It also provides the complete explanation of the case and the history and the relationship of the parties.

¶ 31. The State's central argument is that because the jury's credibility determination was the crux of the case, the hand-burning evidence was relevant because it allowed the jury to better assess M.M.L.'s credibility. The State asserts that the hand-burning evidence was relevant considering "how the hand-burning evidence fit in with the [S]tate's case and Marinez's defense, how the hand-burning evidence came up in M.M.L.'s video-taped statement, and what the credibility analysis entails." The State argues that because of M.M.L.'s age, the limited details of the assault she could provide, and the lack of any physical evidence, this case depended entirely on the jury's assessment of M.M.L.'s credibility, which was also the basis of Marinez's defense. The State asserts that the jury needed to see the entire video in order to assess M.M.L.'s credibility, which the State provides is a "holistic" assessment that "depends on more than isolated parts of a witness's answers," including the "variety of factors" listed in the credibility jury instruction. Wis—JI Criminal 300. Since Marinez's defense at trial was that M.M.L.'s allegations in the video were too vague, the State argues that the hand-burning references were necessary to provide the complete context of M.M.L.'s allegations regarding the timing, location, and perpetrator of the assault. Further, the State emphasizes that the circuit court reasonably concluded that M.M.L.'s description of the hand-burning incident in the video was so "integral" to her allegations of sexual assault that admitting the video as a whole was necessary to provide the jury with sufficient background information with which to assess M.M.L.'s credibility. Finally, the State argues that to

present the who, when and where of the sexual assault, it was critical to show the entire video to the jury, including M.M.L.'s references to the hand burning.

¶ 32. Marinez primarily asserts that the hand-burning evidence was not relevant because it simply was not necessary to establish any element of the State's case. He argues that M.M.L.'s other statements, not referring to the hand burning incident, and other witnesses' testimony were sufficient to establish context, identity, and the time frame. Additionally, Marinez argues that M.M.L.'s hand-burning references do not provide any context because there is no link between the hand-burning incident and the sexual assault like there was in Hunt between the sexual assault and the defendant's illegal drug use. Finally, Marinez asserts that the hand-burning references are not relevant to M.M.L.'s credibility because such determinations are left to the trier of fact, and bolstering M.M.L.'s credibility in this way is improper.

█

¶ 33. This second prong is significantly more demanding than the first prong but still does not present a high hurdle for the proponent of the other-acts evidence. "The expansive definition of relevancy in Wis. Stat. § 904.01 is the true cornerstone of the Wisconsin Rules of Evidence." Blinka, *supra,* § 401.1 at 97. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. Even dissimilar events or events that do not occur near in time may still be relevant to one another. *Payano,* 320 Wis. 2d 348, ¶ 70. There are two parts to a relevancy analysis: first, "whether the evidence relates to a fact or proposition that is of conse-

quence to the determination of the action," and second, "whether the evidence has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." *Sullivan,* 216 Wis. 2d at 785–86; *Payano,* 320 Wis. 2d 348, ¶ 68. The second part of the relevancy analysis illustrates the evidence's probative value, which is also part of the third prong of the Sullivan test. *See Sullivan,* 216 Wis. 2d at 786.

¶ 34. Each of the purposes for which the hand-burning evidence was admitted relates to a proposition that is of consequence to the determination, namely, whether the jury believed M.M.L.'s account of sexual abuse at the hands of Marinez. "A witness's credibility is always 'consequential' within the meaning of Wis. Stat. § 904.01." Blinka, *supra,* § 401.101 at 98. Like so many child sexual assault cases, this case boiled down to whom the jury believed; the child alleging she was sexually assaulted or the defendant who denies it occurred. *See* Blinka, *supra,* § 404.7 at 217–18 (noting that "[c]hild sexual abuse prosecutions often proceed under three major disabilities: they rely on a single witness who is very young and whose allegations are frequently unsupported by physical evidence"). The difficult proof issues provide the rationale behind the greater latitude rule. *Davidson,* 236 Wis. 2d 537, ¶ 40. Thus, it follows that the greater latitude rule allows for the more liberal admission of other-acts evidence that has a tendency to assist the jury in assessing a child's allegations of sexual assault. It was reasonable for the circuit court to conclude that the hand-burning references were admissible to add additional context to the limited details of the sexual assault that M.M.L. was able to provide, and to allow the jury to better assess M.M.L.'s credibility, which was the central determination here.

¶ 35. Additionally, it was reasonable for the circuit court to conclude that M.M.L.'s hand-burning references provided additional context about the time and location of the alleged sexual assault. Professor Daniel Blinka states in his treatise on Wisconsin Evidence that "background information is often necessary to provide the jury with the proper context in which to place other critical testimony." Blinka, *supra,* § 401.101, at 101. While Orn referred to the hand-burning incident to try to pin down when the sexual abuse occurred, M.M.L. stated that she did not know "which one was first or last." This was the only time in the interview that Orn asked M.M.L. when this happened. Thus, these facts are an important part of M.M.L.'s disclosure because, without this, the jury may have wondered why no one even asked M.M.L. when this happened, and could have questioned M.M.L.'s credibility based on the lack of information in an excised video interview.

¶ 36. Given the fact that the State sought to admit the hand-burning evidence because M.M.L. referred to that incident in the videotaped interview and wove it into her account of the sexual abuse, the relevance of the hand-burning evidence is tied to the relevance of the video itself. M.M.L.'s videotaped statements alleging that Marinez sexually abused her were properly admissible under Wis. Stat. § 908.08 and of significant relevance because they were the State's sole evidence of the sexual assault. Certainly, given the importance of the video evidence to the State's case, it was not unreasonable for the circuit court to conclude that such evidence was relevant to the jury's credibility determination, which was the central focus of the case, and thus properly admissible. The hand-burning evidence was relevant in this case.

3. Was the probative value of the hand-burning evidence substantially outweighed by the risk or danger of unfair prejudice?

■

¶ 37. After explaining the relevance of the hand-burning evidence, which also pertains to the probative value of that evidence, the circuit court added:

> As to the probativeness versus unfair prejudice analysis, there's also a concern, of course, which is legitimate, that other acts evidence under 904.04, especially involving criminal acts, has the possible effect of being unfairly prejudicial to the defendant or the party against whom it is offered. That is a concern here. The hand burning is an act of violence perpetrated against a child.
>
> I do believe, however, that, first of all, we can significantly minimize the possibility that the jury will use the hand burning evidence for an improper purpose by giving a cautionary instruction. There's a pattern instruction which the State has referred to. I would be willing to modify that as needed in this case, but that would be the general instruction that I would give. It would be the pattern instruction.
>
> That instruction clearly tells the jury they are to use the evidence only for a certain purpose, context and identification. And they are not to use it for any other purpose.
>
> I believe the instruction also tells the jury that they are not to conclude that, because the defendant had committed some other crime that he is, therefore, more likely to have committed the crime in this case.
>
> I also will limit what level of detail and what type of evidence the State can introduce concerning the hand burning. I have already indicated I won't allow photographs of the child's hands.

601

. . .

So we're going to limit the details concerning the hand burning. And I will direct Mr. Wambach to go over that with his witnesses; that that's to be covered in a very general nature so it's just used for the purpose that I have indicated.

¶ 38. The circuit court also noted that its consideration of the greater latitude rule helped tip the balance in favor of admitting the hand-burning evidence when it weighed its probative value against the risk of unfair prejudice.

I do think that the greater latitude of proof standard has its primary application in this case on this last factor; and that given that greater latitude of proof, that this evidence is highly probative and that it is properly admissible. The danger of unfair prejudice is relatively low, given the effect of the Court's limiting ruling and the effect of the cautionary instruction which I will give.

¶ 39. The focus of Marinez's argument is on this third prong. He argues that the hand-burning evidence was extremely prejudicial and that the prosecutor exceeded the limited purposes for which this evidence was admitted. Marinez asserts that the circuit court did not adequately consider just how prejudicial this evidence was, especially given the cumulative effect of M.M.L.'s allegations of both sexual and physical assault at the hands of Marinez. Marinez argues that jurors already see a man charged with sexually assaulting a child as a "monster," and "coupled with further testimony that this monster burned the hands of a five year old girl, it would be difficult, if not impossible to divorce the emotion of such a heinous act from the sexual assault charge for which he is on trial." Additionally, Marinez argues that the generic cautionary instruction was insuf-

ficient to undo the prejudice to Marinez. Marinez asserts that the purposes for which the hand-burning references were admitted, specifically identity, time, location and context, could have been established through other avenues. Finally, Marinez argues that the circuit court should have waited to decide whether to admit the hand-burning evidence until after the defense presented its case and it knew what Marinez challenged.

¶ 40. The State asserts that Marinez has not met his burden of showing that the probative value of the hand-burning evidence is substantially outweighed by the risk or danger of unfair prejudice, particularly considering the deference given to circuit courts' evidentiary rulings. The State argues that the hand-burning references were probative because of their importance to M.M.L.'s disclosure of the sexual assault in the video, which was the only evidence that the jury had to assess her credibility. The State noted that it was not possible or necessary for the circuit court to wait to rule on the other-acts motion until after the defense rested because the video was so critical to the State's case. Further, the State noted that the hand-burning evidence was "certainly prejudicial," but that the circuit court adequately addressed that prejudice by (1) limiting the introduction of details about the hand-burning incident, (2) giving a limiting instruction during voir dire, (3) controlling the testimony on the hand-burning incident, and (4) giving a tailored cautionary instruction to the jury after closing arguments.

¶ 41. We continue to the third prong of the *Sullivan* analysis, recognizing that the burden now shifts to Marinez to establish that the evidence's probative value was substantially outweighed by the danger of unfair prejudice. *Hunt,* 263 Wis. 2d 1, ¶ 69; *Payano,* 320 Wis. 2d 348, ¶ 80. Evidence that is relevant "may be

603

excluded if its probative value is substantially out-weighed by the danger of unfair prejudice." Wis. Stat. § 904.03.[21] The probative value of evidence "is a function of its relevance under Wis. Stat. § 904.01." Blinka, *supra,* § 403.1 at 135. The circuit court should also consider the proponent's need to present this evidence given the context of the entire trial. Blinka, *supra,* § 403.1 at 136. Prejudice is not based on simple harm to the opposing party's case, but rather "whether the evidence tends to influence the outcome of the case by 'improper means.' " *Payano,* 320 Wis. 2d 348, ¶ 87 (quoting *State v. Johnson,* 184 Wis. 2d 324, 516 N.W.2d 463 (1994)). To limit the possibility that the jury will convict based on "improper means," circuit courts may provide limiting instructions, give a cautionary instruction, edit the evidence, or restrict a party's arguments. *Id.,* ¶ 99; *Hunt,* 263 Wis. 2d 1, ¶¶ 72–73; *Sullivan,* 216 Wis. 2d at 791. We presume that juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other acts evidence. *See State v. Pitsch,* 124 Wis. 2d 628, 644 n.8, 369 N.W.2d 711 (1985); *Hunt,* 263 Wis. 2d 1, ¶ 72. Because the statute provides for exclusion only if the evidence's probative value is *substantially out-weighed* by the danger of unfair prejudice, "[t]he bias, then, is squarely on the side of admissibility. Close cases should be resolved in favor of admission." Blinka, *supra,* § 403.1 at 139.

---

[21] Wisconsin Stat. § 904.03 provides in full:

Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

604

¶ 42. For the reasons discussed above in the relevancy analysis, we agree with the State that the hand-burning evidence is highly probative because it was "an integral part of the history that the alleged victim provide[d]" and was intertwined with M.M.L.'s sexual assault allegations in the video. This video testimony was the only opportunity M.M.L. had to tell the jury about the sexual assault because she did not otherwise testify, due to her young age. The State notes that "[i]t is unclear if M.M.L. could have provided coherent live testimony." Thus, the entire video, including the hand-burning references, was critical to the State's case.

¶ 43. As noted above, the probative value of the hand-burning references is tied to the fact that the video was central to the State's case and properly admissible under Wis. Stat. § 908.08. The impetus for the legislature's creation of this means to admit video testimony of child victims is also relevant to the circuit court's analysis of whether the probative value of M.M.L.'s references to the hand-burning incident within the videotape was substantially outweighed by the danger of unfair prejudice. The legislature created Wis. Stat. § 908.08 in recognition of the fact "that special evidentiary rules were necessary to accommodate the increasing numbers of children called as witnesses and the difficult proof problems raised by those cases." Blinka, *supra*, § 808.1 at 884. These difficult proof problems also support the greater latitude rule and therefore provide additional weight to the probative value of evidence within a videotaped interview used in a child sexual assault case.

¶ 44. The hand-burning references were certainly prejudicial to Marinez, as the circuit court noted. As we have noted, to limit prejudice, the circuit court took several measures to ensure that Marinez was not un-

fairly prejudiced. First, the circuit court gave limiting and cautionary instructions to the jury during voir dire and after closing arguments.[22] Second, the circuit court limited the admission of the hand-burning evidence by restricting what details the prosecutor could bring in, excluding any photos of M.M.L.'s burned hands, and warning the prosecutor not to allow witnesses to dwell on the hand-burning incident.

---

[22] The circuit court gave the following modified version of the standard cautionary instruction for other acts evidence after closing arguments:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant burned the hands of [M.M.L.]. If you find that this conduct did occur, you should consider it only on the issues of identity and to provide context for the child's statements. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

> This evidence was received on the issues of, number one, identity. That is whether the person [M.M.L.] described as burning her hands, is one in the same person who sexually assaulted her, such that it tends to identify the defendant as the one who committed the offense charged.

> Number two, context or background, that is to provide a more complete presentation of the evidence relating to the offense charged. You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves.

> It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged. In weighing the evidence you may take into account matters of your common knowledge and your observations and experience in the affairs of life.

*See* Wis—JI Criminal 275.

During voir dire, the circuit court gave a limiting instruction to the jury that was almost identical to the first paragraph of the cautionary instruction quoted above.

¶ 45. Marinez asserts that the limiting and cautionary instructions were inadequate to address the unfair prejudice from this hand-burning evidence, which he argues was especially prejudicial given M.M.L.'s additional comments about Marinez in the video when referencing the hand-burning incident.[23] Marinez further argues that this prejudice was exacerbated by the prosecutor's misuse of such evidence. This argument does not pertain to the three-prong *Sullivan* analysis, however. When we review a circuit court's admission of other-acts evidence under the *Sullivan* analysis, only the facts that were before the circuit court when it ruled on the motion to admit other-acts evidence are relevant. While circuit courts should consider the likely impact of this evidence at trial when providing limiting instructions, we will not conclude that a circuit court erred by failing to divine exactly how the evidence would be used at trial. If the circuit court properly examined the facts before it and balanced the probative value versus the *potential* danger of unfair prejudice of the other-acts evidence, according to the appropriate legal standard, we will affirm its decision.[24] Allegations that a prosecutor used evidence in a

---

[23] Specifically, Marinez argues that M.M.L.'s statements that (1) she thought her mother allowed Marinez to burn her hands, (2) she hoped Marinez was "in jail right now for doing what he did to" her hands, and (3) she hoped her mother would marry a different person, were unfairly prejudicial.

[24] In previous cases in which we reviewed a circuit court's admission of other-acts evidence, we discussed how the evidence was actually used at trial within our three-prong *Sullivan* analysis. *See Sullivan,* 216 Wis. 2d at 790–92; *Davidson,* 236 Wis. 2d 537, ¶ 78; *Hammer,* 236 Wis. 2d 686, ¶ 36 n.8; *Payano,* 320 Wis. 2d 348, ¶ 101. We note that a discussion of how the other-acts evidence was used at trial may supplement our

way that exceeded the purposes for which that evidence was admitted or failed to comply with a circuit court's limiting instruction are more appropriately considered as allegations of prosecutorial misconduct. *See Mayo,* 301 Wis. 2d 642, ¶ 43. Thus, we address Marinez's argument in this regard below under the standard for prosecutorial misconduct.

¶ 46. The circuit court reasonably concluded that Marinez did not meet his burden of establishing that the probative value of the hand-burning evidence was substantially outweighed by the danger of unfair prejudice. Therefore, the circuit court did not err in admitting the hand-burning evidence under Wis. Stat. § 904.04(2)(a) according to the *Sullivan* analysis. Marinez has failed to establish that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. We now turn to Marinez's allegations of prosecutorial misconduct.

## C. Prosecutorial Misconduct

¶ 47. Marinez argues that the circuit court's "allowance of the other acts evidence for the purposes stated [was] an erroneous exercise of judicial discretion because the evidence was not used for the purposes

conclusion that a circuit court properly admitted such evidence, particularly under this third prong. Additionally, if we conclude that a circuit court erred in admitting other-acts evidence, how that evidence was used at trial becomes relevant to our subsequent analysis of whether that error was harmless. *See Sullivan,* 216 Wis. 2d at 792–94.

Because we conclude that the circuit court properly exercised its discretion in admitting the other-acts evidence, we do not reach the harmless error analysis in this case. Thus, we consider Marinez's argument in this regard as an allegation of prosecutorial misconduct.

proposed by the [S]tate." Marinez alleges that there are several instances in which the prosecutor exceeded the circuit court's limitations on the use of this evidence, which we address below.

¶ 48. The State responds that this issue, whether the prosecutor exceeded the circuit court's limits on the admission of other-acts evidence, is not properly before this court because it was not raised in the State's petition for review, or in a cross-petition by Marinez, nor was it objected to at trial. The State also asserts that Marinez's arguments about how the prosecutor used the hand-burning evidence at trial are not pertinent to the Sullivan analysis, which reviews the circuit court's admission of this evidence before trial.[25] As discussed in more detail above, we agree with the State that allegations of misuse of other-acts evidence by a prosecutor are not properly part of the Sullivan analysis.

¶ 49. Such allegations should be considered an argument for a new trial due to prosecutorial misconduct. *See Mayo,* 301 Wis. 2d 642, ¶ 43. Initially, a

_____

[25] *See e.g., State v. Warren J.A.,* No. 1997AP2455–CR, unpublished slip op., (Wis. Ct. App. Nov. 18, 1998) (separately addressing the issues of the admissibility of other-acts evidence and the prosecutor's alleged misuse of that evidence); *United States v. Hale,* 448 F.3d 971, 986 (7th Cir. 2006) (characterizing the defendant's claim that the prosecutor misused other-acts evidence during rebuttal "as a claim of prosecutorial misconduct separate from the district court's evidentiary ruling"); *United States v. Simpson,* 479 F.3d 492 (7th Cir. 2007) (concluding that the defendant's claim that the prosecutor misused the other-acts evidence was an allegation of prosecutorial misconduct and addressing it in the harmless error analysis after holding that such evidence was improperly admitted).

defendant ought to contemporaneously object to any misuse of other acts evidence by a prosecutor to allow a circuit court the opportunity to correct any alleged errors during trial. *See State v. Doss,* 2008 WI 93, ¶ 83, 312 Wis. 2d 570, 754 N.W.2d 150. A defendant who fails to object at the time of alleged errors by the prosecutor risks forfeiting review of such errors on appeal. *Id.* That being said, "some errors are so plain or fundamental that they cannot be waived" and will be considered on appeal despite the absence of an objection. *Davidson,* 236 Wis. 2d 537, ¶ 88. Because of the limited evidence presented at trial, and the potentially prejudicial nature of this other-acts evidence, we will address Marinez's claim of prosecutorial misconduct.

¶ 50. As we discussed previously, the circuit court placed limitations on the hand-burning evidence. First, the prosecutor was not permitted to introduce photographs of M.M.L.'s burned hands. Second, the State's witnesses were not permitted to dwell on the hand burning incident. Third, the prosecutor was not allowed to introduce medical evidence or a detailed explanation of M.M.L.'s injuries. Fourth, the prosecutor was instructed to explain to his witnesses the limitations on the hand-burning evidence so that it would be used only "in a very general nature" for the prescribed purposes.

¶ 51. Marinez asserts that the following details of the hand-burning incident should not have been admitted because they were unnecessary and emotional, and that the prosecutor improperly focused on these details during trial. Marinez challenges the focus on the following details: (1) M.M.L. thought her mother allowed Marinez to burn her hands, (2) M.M.L. wanted her mother to marry someone else, (3) M.M.L. hoped that Marinez was in jail for burning her hands, (4) M.M.L.

had to go to two hospitals after her hands were burned, and (5) M.M.L. had to stay at the hospital "for some period of time" because her burns were serious. M.M.L. referred to the first three details during the videotaped interview while referring to the hand-burning incident. These statements were part of the hand-burning references that the circuit court admitted, and thus these references did not violate the circuit court's limitations on such evidence. The fourth and fifth details, listed above, came out in Rachel Marinez's testimony after the prosecutor was directed to lead her in order to stay within the circuit court's order.[26] At the time, Marinez did not object to the prosecutor's questions that elicited these facts. The State concedes that these questions were outside of the circuit court's limiting order because these facts were not mentioned in the videotape. While these facts arguably may have been outside of the circuit court's limitations, they do not add significantly inflammatory details to those that were already admitted regarding the hand-burning incident. Any prejudice to Marinez from the references to the hand-burning incident, or to the details surrounding that incident, was addressed in the limiting and cautionary instruc-

---

[26] These facts came forth in the following exchange:

Prosecutor Wambach: [M.M.L.] was transported from Watertown ER to the University of Wisconsin Hospitals in Madison?

Rachel Marinez: Yes.

Q: And the defendant did come to visit her that same night, December the 27th; correct?

A: Yes.

Q: [M.M.L.] stayed at the hospital for some period of time; right?

A: Yes.

Q: Because her burns were serious?

A: Yes.

tions. These additional details did not negate the effect of those instructions or "so infect[] the trial with unfairness" as to deny Marinez due process.

¶ 52. Marinez also asserts that the prosecutor misused the hand-burning evidence throughout his closing argument, and he highlights four specific instances of alleged misuse. These statements were not objected to at trial. First, Marinez alleges that, during closing argument, the prosecutor "essentially lump[ed] the burning hands in with the sexual assault allegation" when the prosecutor argued as follows:

> Do you remember how [M.M.L.] described the fact that the defendant had burned her hands? She first said: My mommy letted, my mommy letted Mikey burn my hands. That's how she felt. As long as we are talking about that, let's fast forward to when Kari asked her asked [M.M.L.] if – I want to get this right.

> If something happens, is there a safe grown up you can talk about stuff with? [M.M.L.] said: James is a safe person. You know James, from her mother's testimony and from [M.M.L.'s], was the driver who would take [M.M.L.] to go visit her mother after [M.M.L.'s] hands had got burned. James is a safe person. You're a safe person. Cathy is a safe person.

> No Mikey. Is he not a safe person. Isn't that consistent with someone who touches your private area when they shouldn't when your mom is off at work? Not there protecting you in your four year old mind. Mikey is not a safe person. And you notice mommy didn't make that list of safe people either; did she.

The aim of the prosecutor's line of argument here became clear when he explained the conclusion that he wanted the jury to draw from these facts, which is that M.M.L. was consistent in her statements within the video.

> And isn't that consistent corroboration of a child who says: Mommy letted him burn my hands. Isn't that consistent in the way [M.M.L.] has put together the fact that her mother isn't protecting her.

The prosecutor properly used this evidence for the purposes of context and credibility for which this evidence was admitted.

¶ 53. Second, Marinez asserts that the following excerpt of the prosecutor's closing argument goes beyond the circuit court's order:

> We also learned from Kari Orn that when there have been multiple incidents of abuse, that her experience is that there are times when, in fact, children will relate because disclosure is a process. It's not an event. That there will be times when the child will relate, for instance, like in this case, that her hands had been burned by Mikey. And at some later point, she will, based on all of the factors going on, fear could be one of them.

> Certainly after someone has burned your hands serious enough for you to have to get transferred from the ER to the UW Hospital and to stay there, that you might not feel safe at that point and that you might not be able to differentiate all the things going on in the moment with past abuse.

This is not a misuse of the hand-burning evidence. The prosecutor used the fact that the jury knew that there was a serious incident of physical abuse to explain why M.M.L. may have initially disclosed the physical, but not the sexual, abuse. This is permissible to provide context to M.M.L.'s disclosure to assist the jury in assessing whether her statements are credible.

¶ 54. Third, Marinez argues that, during his rebuttal, the prosecutor tried to present Marinez as someone with a "criminal character" by mentioning that M.M.L.'s burns were so serious that she was treated in two different hospitals. The prosecutor stated:

> Let's turn to what the defense argues: Look at how different [M.M.L.] acted between talking about the burning of her hands and her private area being violated. Well, what would you expect? I mean she was - - she had serious burns and she was in two different hospitals. That, of course, is going to have a much greater impact on you when you are four and you don't even necessarily have an appreciation for just how private that private area is. Right.

In the context of the prosecutor's argument, it is clear that these details were used for a permissible purpose within the circuit court's order: that is, to provide context for the jury to assess M.M.L.'s credibility regarding the sexual assault. Additionally, we note that Marinez opened the door to this response by the prosecution when he argued in closing that the jury should not believe M.M.L. because of the differences in her demeanor when she talked about the two incidents in the video. *See United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982 (noting that "where defense counsel makes remarks in closing that invite the [State] to respond, the prosecutor may, in rebuttal, enter into areas which would otherwise constitute improper argument.").

¶ 55. Finally, Marinez argues that the prosecutor's following argument during rebuttal closing invited the jury to convict based on Marinez's "overall evil charac-

614

ter." Marinez refers to the following portion of the prosecutor's rebuttal argument:

> We know from the evidence that the defendant is responsible for burning [M.M.L.'s] hands. And that wasn't to distract you, but when the child is believable and credible in letting you know what he did, when he perpetrated that kind of abuse on her, the facts and circumstances tell you that she has the same credibility in describing the other abuse he did.

> . And that's what this trial is about and that's what you should find the defendant guilty of. Thank you.

The State concedes that this line of argument was improper, perhaps presuming that this was an improper comment on M.M.L.'s credibility or Marinez's character. We disagree with both Marinez's assertion and the State's concession. The prosecutor asked the jury to conclude that M.M.L.'s allegations of sexual assault were credible because they were in the context of a videotaped interview in which she also accurately recounted physical abuse by Marinez. Context and credibility are both proper purposes for which the hand-burning evidence was admitted. Therefore, none of the prosecutor's statements discussed above "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Mayo,* 310 Wis. 2d 642, ¶ 43.

## IV. CONCLUSION

¶ 56. We hold that the circuit court did not err in admitting the video in its entirety under Wis. Stat. §§ 904.04(2)(a) and 908.08. We affirm the circuit court's evidentiary ruling on the admissibility of the other-acts evidence because the circuit court "examined the relevant facts, applied a proper standard of law, used a

demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *Hunt*, 263 Wis. 2d 1, ¶ 34.

¶ 57. We conclude that, in light of the greater latitude rule, and the fact that the other-acts evidence was so intertwined with the otherwise admissible videotaped statement of the child victim, the circuit court properly determined that each of the three prongs of the *Sullivan* analysis supported admission. *See Sullivan*, 216 Wis. 2d at 772–73. Under the first prong, we conclude that the circuit court reasonably concluded that, under Wis. Stat. § 904.04(2)(a), the hand-burning references were admissible for the proper purposes of establishing M.M.L.'s identification of Marinez as her abuser and providing context, including assisting the jury in assessing M.M.L.'s credibility, establishing the time and location of the sexual abuse, and providing a complete story to the jury. Regarding the second prong, we conclude that the circuit court's determination that the hand-burning evidence was relevant to the above purposes was reasonable, pursuant to Wis. Stat. § 904.01. Under the third prong, we conclude that the circuit court reasonably determined that, in accord with Wis. Stat. § 904.03, the probative value of the entire video, including M.M.L.'s references to the hand-burning incident, was not substantially outweighed by the danger of unfair prejudice to Marinez.

¶ 58. We are also satisfied that any misuse of the hand-burning evidence by the prosecutor did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *See Mayo*, 301 Wis. 2d 642, ¶ 43. Thus, we reverse the court of appeals and affirm the circuit court's judgment of conviction.

*By the Court.*—The decision of the court of appeals is reversed and the judgment of conviction is affirmed.

¶ 59. SHIRLEY S. ABRAHAMSON, C.J. (*dissent-ing*). I agree with the unanimous decision of the court of appeals reversing the conviction for the sexual offense and allowing Marinez to get a new trial. I agree with the court of appeals that the circuit court erroneously exercised its discretion in admitting the four-year-old child's videotaped statements describing a separate incident in which Marinez burned her hands. I also agree with the court of appeals that the district attorney's office improperly introduced testimony and arguments about the burning beyond what the circuit court allowed.[1]

¶ 60. The issue in the present case is whether Marinez got a fair trial when the circuit court admitted the full videotape in which the four-year-old accused Marinez of burning her hands so severely that she was hospitalized.

¶ 61. The majority concludes the hand-burning evidence is "highly probative," yet cannot articulate an answer to the question, probative of what?

¶ 62. The majority confuses the issue by stating the obvious and uncontested proposition that the videotape interview of the child is highly probative regarding the charged crime. Certainly those parts of the videotape in which the child accuses Marinez of the sexual offense charged are highly probative of the charged crime. The question presented, however, is how are the child's six distinct references in the videotape to a seperate hand-burning incident relevant to the sexual assault, beyond showing that Marinez is a bad man and has a propensity for hurting children? The answer is

---

[1] *State v. Marinez*, No. 2009AP567–CR, unpublished slip op. (Wis. Ct. App. Mar. 18, 2010).

that the six references are not relevant to the sexual assault and should have been excised from the videotape.[2]

¶ 63. The conclusion I draw from the evidence of Marinez's reprehensible act in severely burning a four-year-old's hands (and I think it is the conclusion that all reasonable people would draw) is that Marinez is a bad person who is likely to harm this child again (and perhaps harm any child with whom he has contact). As I see it, evidence of the burning incident obscured the focus of the trial, which was supposed to be on the sexual assault.[3] Because of the burning evidence, there was the likelihood that the jury would convict Marinez for the sex offense "merely because he is a person likely to do such acts."[4]

¶ 64. The burning evidence was character evidence, inadmissible for the purpose of proving Marinez acted in conformity with his character or propensities. The aim of Wis. Stat. § 904.04(2) is to keep evidence from the jury that the defendant is a bad person and so is prone to commit the crime alleged.[5] The purpose of § 904.04(2) is to prevent the State from relying on character and propensity evidence, "implying that the jury needn't worry overmuch about the strength of the

---

[2] No one suggests that the videotape of the child's statements could not have been edited to eliminate the references to the burning. Yet the circuit court did not have the videotape edited.

[3] *State v. Sonnenberg,* 117 Wis. 2d 159, 178, 344 N.W.2d 95 (1984).

[4] *State v. Whitty,* 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967).

[5] *State v. Sullivan,* 216 Wis. 2d 768, 782–83, 576 N.W.2d 30 (1998).

government's evidence."[6] The law is designed to ensure that Marinez (and every other person charged with a crime) gets a fair trial in which the State must prove the charged crime beyond a reasonable doubt. The law does not allow Marinez to be convicted of a sexual offense because he is a bad person who has a propensity to hurt this child.[7]

¶ 65. Wisconsin Stat. § 904.04(2) does, however, allow the State to introduce evidence of other bad acts for certain limited purposes. The majority opinion struggles mightily and at great length to fit the burning evidence into one of the legitimate purposes for introducing other crimes evidence.

¶ 66. The majority opinion offers a litany of legitimate purposes for the burning evidence. *See* majority op., ¶ 4. But the majority fails in its attempts to legitimize the introduction of the burning evidence.

¶ 67. The majority seems to say that the burning incident is permissible to establish the identity of Marinez as the person who committed the sexual offense. The State abandoned the identity argument before the court of appeals,[8] but the State resurrected it on questioning by this court at oral argument. *See* majority op., ¶ 23 n.16.

¶ 68. The majority opinion resurrects identity as a proper purpose for the burning evidence by adopting a new approach to identity evidence. The majority also seemingly joins identity with "context" and "credibility." The majority's discussions of identity evidence are conflicting and, in my opinion, leave the law surround-

[6] *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008).

[7] *See Sullivan*, 216 Wis. 2d at 783.

[8] *State v. Marinez*, No. 2009AP257–CR, unpublished slip op., ¶ 10 (Wis. Ct. App. Mar. 18, 2010).

ing the purpose of identity evidence uncertain and confused. *Compare* majority op., ¶ 12 n.11, ¶ 18 n.13, ¶ 22, ¶ 23 n.16, ¶ 26 n.17.

¶ 69. The majority opinion also allows introduction of the burning evidence as "providing context, including assisting the jury in assessing [the child's] credibility . . . and providing a complete story to the jury." *See* majority op., ¶ 4.

¶ 70. I agree that "context" and "providing a complete story" are permissible purposes for introducing other crimes evidence. Case law and treatises explain that "context" and "completing the story" evidence are a part of the *res gestae* of the crime.[9] The other crime must be integral to the crime charged such that evidence of the other crime is not only helpful in "completing the story" but is necessary to fill in otherwise misleading or confusing gaps related to the charged crime.[10]

¶ 71. The burning incident in the present case does not fall within these accepted concepts of "context" or "completing the story." The references to the hand-burning incident are not integral to the sexual assault crime. The burning is a separate crime, distinct in time and type; it doesn't fill in misleading or confusing gaps related to the sexual assault crime.

---

[9] *See, e.g., State v. Hereford,* 195 Wis. 2d 1054, 1069, 537 N.W.2d 62 (Ct. App. 1995); 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* 198–99 (3d ed. 2008).

[10] *State v. Muckerheide,* 2007 WI 5, ¶ 53, 298 Wis. 2d 553, 725 N.W.2d 930 (Abrahamson, C.J., dissenting):

> Case law and treatises explain that 'context' evidence show the *res gestae* of the crime. The other act is ordinarily close in time to the crime and is integral to the crime such that is not only helpful in understanding what happened but is necessary to complete the story by filling in otherwise misleading or confusing gaps. In other words, the fact-finder must hear the entire story in order not to be misled. (Citations omitted.)

¶ 72. The majority, however, has offered a new explanation of "context" and "completing the story." As used by the majority these concepts are unlimited, vague, and render the law's prohibition of character evidence meaningless. "The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing" altogether the rule prohibiting character and propensity evidence.[11] "Context" and "completing the story" cannot be interpreted so broadly that these concepts allow the introduction of all propensity and character evidence.

¶ 73. The majority opinion allows prosecutors to expand the boundaries of "context" and "complete the story" beyond the proper boundaries of the rule prohibiting character and propensity evidence.[12] Similar expansions have been criticized by federal courts as threatening to override the evidentiary rule making other acts evidence inadmissible.[13]

¶ 74. The majority opinion goes even one step further in expanding these boundaries by presenting "context" and "completing the story" as being intertwined with and offered to prove credibility. In doing so the majority opinion expands and changes the concept of credibility evidence. *See* majority op., ¶¶ 27, 28. Indeed, it is difficult to discern whether "context" and "credibility" are one or two concepts in the majority opinion.[14]

---

[11] *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).

[12] *United States v. Klebig*, 600 F.3d 700, 713 (7th Cir. 2009).

[13] *See Klebig*, 600 F.3d at 713; *Taylor*, 522 F.3d at 734; *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000).

[14] *See* majority op., ¶ 4 ("providing context, including assisting the jury in assessing . . . credibility"); ¶ 12 n.11 ("context as it relates to credibility"); ¶ 22 ("providing a complete explanation of the case, and enhancing M.M.L's credibility"); ¶ 26

¶ 75. Ultimately, the majority opinion concludes that the hand-burning incident makes the child's testimony about the sexual offense more credible.

¶ 76. The majority struggles to articulate how it is that the references to the hand-burning in the child's video statement make her statements regarding the sexual assault more credible. While not explicitly articulating its conclusion, the majority opinion winds up relying upon the inference that because the child told the truth about a separate and distinct crime of hand-burning it is more probable that she is telling the truth about the sexual assault.[15] This kind of evidence and inference is not admissible to prove credibility.[16]

¶ 77. In any event, even assuming that the burning evidence is relevant for a proper (non-character or propensity) purpose, the probative value, if any, of the

("[w]ithin context, the circuit court properly admitted this evidence to provide a more complete story of the sexual assault . . . [and] to provide greater information from which the jury could assess M.M.L.'s credibility"); ¶ 26 n.18 ("[t]he circuit court admitted the hand-burning evidence as relevant to M.M.L.'s credibility under the umbrella of context"); ¶ 27 ("context, credibility, and providing a more complete background are permissible purposes"); ¶ 28 ("the hand-burning evidence establishes context and credibility and provides a more complete story"); ¶ 28 n.19 ("admitting the hand-burning references was necessary to provide context . . . and to help the jury assess her credibility"); ¶ 34 (hand-burning evidence relates to the victim's credibility).

[15] Thus the majority opinion concludes at ¶ 34: "Each of the purposes for which the hand-burning evidence was admitted relates to a proposition that is of consequence to the determination, namely, whether the jury believed [the child's] account of sexual abuse at the hands of Marinez."

[16] Credibility is attacked or supported by evidence in the form of reputation or opinion. *See* Wis. Stat. § 906.08.

burning incident evidence is substantially outweighed by the danger of unfair prejudice.[17] The numerous cautionary jury instructions the circuit court gave do not sway this balance; on the contrary, they only served to highlight the hand-burning incident. Majority op., ¶¶ 41, 44.

¶ 78. The error in admitting the burning evidence was not harmless in and of itself under the circumstances of the case. In this case the error was further exacerbated by the State's comments in closing arguments about the burning evidence contrary to the circuit court's instructions. *See* majority op., ¶ 52.

\* \* \* \*

¶ 79. The majority opinion has taken another step toward a judicially created exception to Wis. Stat. § 904.04(2), allowing virtually unrestricted use of propensity evidence in child sexual assault cases.[18] The greater latitude rule for admission of other crime evidence in child sexual offense cases cannot overcome the total lack of a proper purpose for the burning incident evidence in the present case. The child's videotaped testimony that "Mikey" burned her hands leads to the inference that Marinez has hurt this child and has acted in conformity with his character by sexually assaulting the child as charged. This propensity evidence "is not legally or logically relevant to the crime charged."[19]

¶ 80. Justice Bradley said it all a decade ago:

---

[17] Wis. Stat. § 904.03.

[18] *State v. Davidson,* 2000 WI 91, ¶ 93, 236 Wis. 2d 537, 613 N.W.2d 606 (Bradley, J., dissenting).

[19] *Whitty,* 34 Wis. 2d at 292.

Unfortunately our post-*Whitty* jurisprudence consistently reveals that courts may freely permit prior acts evidence in child sexual assault cases to show the defendant's propensity to abuse children. Despite *Sullivan*'s valiant attempt to revitalize *Whitty* and its call to exercise restraint in prior acts determinations, this court has once again contorted the definitions of the acceptable statutory purposes to meet the facts.

Rather than endeavoring to stretch beyond repair the definitions of the acceptable purposes under Wis. Stat. § (Rule) 904.04(2), the majority should simply lay all its cards on the table and acknowledge that it is sanctioning the blanket use of propensity evidence in child sexual assault cases. However, the majority maintains its refuge under the cloak of the very statute it simultaneously erodes. . . .

An honest and forthright approach by the majority would serve us all better than perpetrating the artifice of adherence to Wis. Stat. § (Rule) 904.04(2). Because the majority engages in legal gymnastics to justify the admission of propensity evidence in contravention of the statute, I dissent.

*State v. Davidson,* 2000 WI 91, ¶¶ 108–110, 236 Wis. 2d 537, 613 N.W.2d 606 (Bradley, J., dissenting).

¶ 81. For the reasons set forth, I would affirm the decision of the court of appeals. Accordingly, I dissent.

¶ 82. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.