**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 30, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP965-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CM153

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

CLINTON D. CLUCAS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Affirmed and cause remanded for further proceedings.*

¶1 KLOPPENBURG, J.[1] The State of Wisconsin charged Clinton Clucas, in the Portage County Circuit Court, with disorderly conduct with a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

domestic abuse enhancer and misdemeanor bail jumping. The charges concern an incident in March 2021 during which Clucas allegedly threatened his then-wife and hit her on the side of the head. Before trial, the State filed a motion, pursuant to WIS. STAT. § 904.04(2), seeking to introduce evidence at trial of other acts allegedly committed by Clucas against his then-wife and a prior girlfriend.[2] The circuit court denied the State's motion as to three of the proffered other acts and granted the motion as to the fourth other act. The State appeals under WIS. STAT. § 974.05(1)(d)2. (allowing the State to appeal, prior to trial, an "[o]rder or judgment the substantive effect of which results in … [s]uppressing evidence").

¶2      The State argues that the circuit court erred in denying its motion to introduce evidence of the three other acts and also in saying that, should the State at trial be allowed to renew its motion, the State would be required to present that evidence through the testimony of "witnesses with personal knowledge of these incidents." For the following reasons, I affirm.

## BACKGROUND[3]

¶3      According to the criminal complaint, at approximately 7:35 p.m. on March 8, 2021, A.B. told an officer with the Stevens Point Police Department the following. She and Clucas were, at that time, married but separated and no longer

---

[2] I use the initials A.B. to refer to Clucas's then-wife and C.D. to refer to his prior girlfriend in order to protect their identities. *See* WIS. STAT. RULE 809.86.

[3] On appeal, a party must include appropriate factual references to the record in its briefing. WIS. STAT. RULE 809.19(1)(d)-(e). The State's citations in support of its factual assertions and argument are instead to its own appendix. The appendix is not the record. *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. We remind counsel of the obligation to comply with the Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.83(2) (providing for the imposition of sanctions for violation of the Rules of Appellate Procedure).

living together. Approximately one hour earlier, she had gone to Clucas's residence in Stevens Point to pick up their two children. A.B. and the children were outside near the side porch when Clucas's father asked to say goodbye to the children. Clucas then came down the stairs and started "getting in her face" and accusing her of spreading lies about him. She "kinda laughed" and said she had no idea what he was talking about. Clucas continued to accuse her "of things" and she told him she "wasn't doing this." Clucas walked past her and as he did he hit her with an open palm on the back left side of her head, while she was holding one of their children. The child "announced" that Clucas had hit her shortly after it happened.

¶4 The criminal complaint stated that, at the time of this incident, Clucas was out on bond in an open and pending case, Portage County Case No. 20CM180, with a condition of bond being no violent or abusive contact with A.B. In that case, Clucas was charged with disorderly conduct-domestic abuse.

¶5 The State filed the criminal complaint in this case in May 2021, charging Clucas with disorderly conduct with a domestic abuse enhancer and misdemeanor bail jumping. In February 2022, the State filed a motion seeking to introduce other-acts evidence pertaining to four separate incidents. The details of these other acts will be presented in the analysis that follows.

¶6 After briefing and oral argument by the parties, the circuit court ruled that the evidence proffered by the State pertaining to one other act was admissible and denied the motion as to the three remaining other acts. The court said that the State may renew the motion should "circumstances change during the trial," and that the State would be required to present that evidence through the

testimony of "witnesses with personal knowledge of these incidents." The State appeals.

## DISCUSSION

¶7 I begin with the legal principles that govern this court's analysis regarding the other-acts evidence at issue in this appeal. I next provide additional background pertinent to the details of that evidence and the circuit court's ruling on the State's other-acts evidence motion. I then explain my conclusion that the State fails to show that the circuit court erroneously exercised its discretion in its ruling.

### I. Governing Legal Principles

¶8 "[T]he decision to admit other-acts evidence is reviewed for an erroneous exercise of discretion." *State v. Lock*, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378; *see also State v. Dorsey*, 2018 WI 10, ¶37, 379 Wis. 2d 386, 906 N.W.2d 158 ("the circuit court's decisions to admit or exclude evidence are entitled to great deference" (quoted source omitted)); *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515. A court properly exercises its discretion when it considers the facts of record, applies the proper legal standard, and reasons its way to a rational and legally sound conclusion. *Dorsey*, 379 Wis. 2d 386, ¶37; *State v. Payano*, 2009 WI 86, ¶41, 320 Wis. 2d 348, 768 N.W.2d 832; *Lock*, 344 Wis. 2d 166, ¶43; *Dukes*, 303 Wis. 2d 208, ¶26. This court's review is deferential; if the record reveals a basis for the circuit court's decision, this court will uphold it. *See Payano*, 320 Wis. 2d 348, ¶41. "We generally look

for reasons to sustain the [circuit] court's discretionary decisions." ***Lock***, 344 Wis. 2d 166, ¶43.[4]

¶9 "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity" with that character. WIS. STAT. § 904.04(2)(a). However, under some circumstances, "evidence of other crimes, wrongs, or acts" is admissible. In addressing a circuit court's decision to admit other-acts evidence, this court follows the three-step analysis set forth in ***State v. Sullivan***, 216 Wis. 2d 768, 771-73, 783, 576 N.W.2d 30 (1998).

¶10 The first step in the ***Sullivan*** analysis asks whether the party offers the evidence for a permissible purpose under WIS. STAT. § 904.04(2)(a). ***Sullivan***, 216 Wis. 2d at 772. Permissible purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a); ***Sullivan***, 216 Wis. 2d at 772.

¶11 Our supreme court has observed that "[t]his first step in the ***Sullivan*** analysis is not demanding." ***State v. Marinez***, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399. The court stated that "[i]dentifying proper purposes for the admission of other-acts evidence is largely meant to develop the framework for the relevancy determination [in the second step]," and that "[t]he purposes for which other-acts evidence may be admitted are 'almost infinite[,]' with the prohibition

---

[4] Contrary to this well-established standard of review, the State asserts in one sentence in its appellant's brief that this court's review is de novo because this appeal requires that this court interpret a statute. However, in its reply brief, the State appears to clarify that its argument is, more accurately, that the circuit court erroneously exercised its discretion by relying on an improper legal standard contrary to WIS. STAT. § 904.04(2)(b)1., and that this court interprets that statute de novo. We address this argument in our analysis below.

against drawing the propensity inference being the main limiting factor." ***Id.*** (citation omitted). Thus, the court explained, "'[t]he proponent need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct.'" ***Id.*** (quoted source omitted). The court concluded that the first step of the ***Sullivan*** analysis is met if the proponent has "articulated at least one permissible purpose for which the other-acts evidence was offered." ***Id.***

¶12    The second step in the ***Sullivan*** analysis asks whether the other-acts evidence is relevant. ***Sullivan***, 216 Wis. 2d at 772. Evidence of other acts is "inherently relevant to prove character" and, therefore, the issue is whether the other-acts evidence is relevant to anything other than to prove character. ***Payano***, 320 Wis. 2d 348, ¶67 (citing Daniel D. Blinka, WISCONSIN EVIDENCE, § 404.6 (3d ed.); ***State v. Johnson***, 184 Wis. 2d 324, 337 n.1, 516 N.W.2d 463 (Ct. App. 1994)). Under this second step, "the relevance inquiry is two-fold: first, '[t]he evidence must relate to a fact or proposition of consequence'; second, the evidence must have probative value, that is, 'a tendency to make a consequential fact more or less probable than it would be without the evidence.'" ***Dorsey***, 379 Wis. 2d 386, ¶44 (quoted source omitted). This court reviews whether the proponent has met its burden on both relevancy considerations under the erroneous exercise of discretion standard. *See* ***Payano***, 320 Wis. 2d 348, ¶79.

¶13    Whether other-acts evidence is "of consequence" asks whether it is logically related to an element of the offense, that is, whether, under the substantive law, it is related to "the ultimate facts and links in the chain of inferences that are of consequence to the case." ***Sullivan***, 216 Wis. 2d at 786. "An element of a crime constitutes a consequential fact that the State must prove." ***Dorsey***, 379 Wis. 2d 386, ¶48 (quoted source omitted). In engaging in this part of

the relevancy consideration, the court focuses on the pleadings, which set forth the elements of the charges, and the contested issues in the case. *Payano*, 320 Wis. 2d 348, ¶69.

¶14 "Whether other-acts evidence has probative value asks whether the other acts are similar, that is, whether they are near 'in time, place, and circumstance[,] to the alleged crime or to the fact or proposition sought to be proved.'" *Dorsey*, 379 Wis. 2d 386, ¶49 (quoting *Sullivan*, 216 Wis. 2d at 786). The relevancy part of the *Sullivan* analysis turns in part on the "'similarity between the charged offense and the other act.'" *State v. Hurley*, 2015 WI 35, ¶79, 361 Wis. 2d 529, 861 N.W.2d 174 (quoted source omitted). "The greater the similarity, complexity and distinctiveness of the events, the stronger is the case for admission of the other acts evidence." *Sullivan*, 216 Wis. 2d at 787.

¶15 The moving party (in this case, the State) seeking the admission of the other-acts evidence has the burden to establish the first two steps of this analysis "by a preponderance of the evidence." *Marinez*, 331 Wis. 2d 568, ¶19.

¶16 If the moving party has established the first two steps of the *Sullivan* analysis, the burden then shifts to the opposing party (in this case, Clucas) in the third step "to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice" or "confusion of the issues" for the jury. *Marinez*, ¶¶19, 41; *see* WIS. STAT. § 904.03. This court reviews the circuit court's decision on this third step of the *Sullivan* analysis for an erroneous exercise of discretion. *Marinez*, *331 Wis. 2d 568*, ¶17.

¶17 "The evidence's probative value 'largely turns on the relevancy analysis' from step two under *Sullivan*." *Payano*, 320 Wis. 238, ¶81 (quoted source omitted). "Essentially, probative value reflects the evidence's degree of

relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." *Id.* "The main consideration in assessing probative value of other acts evidence 'is the extent to which the proffered proposition is in substantial dispute'; in other words, 'how badly needed is the other act evidence?'" *Id.* (quoted source omitted).

¶18     "Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means … or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789-90. In other words, unfair prejudice in the context of this step of the *Sullivan* analysis exists if the jury will draw improper propensity inference against the defendant. *See State v. Fishnick*, 127 Wis. 2d 247, 261-62, 378 N.W.2d 272 (1985) (the danger of unfair prejudice from admission of other-acts evidence "is the potential harm in a jury's concluding that because an actor committed one bad act, [the actor] necessarily committed the crime with which [the actor] is now charged").

¶19     "This is the general framework that governs the admissibility of other crimes evidence in all Wisconsin cases." *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606. In addition to this general framework, there is a greater latitude of proof as to other like occurrences in cases involving domestic abuse under the *Sullivan* analysis. *Dorsey*, 379 Wis. 2d 386, ¶¶26, 35; *see* WIS. STAT. § 904.04(2)(b)1. This greater latitude rule is stated in § 904.04(2)(b)1., as follows:

> b) Greater Latitude.
>
> > 1. In a criminal proceeding alleging a violation of s. 940.302(2) or of ch. 948, alleging the commission of a serious sex offense, as defined in s. 939.615(1)(b), or of domestic abuse, as defined in

s. 968.075(1)(a),[5] or alleging an offense that, following a conviction, is subject to the surcharge in s. 973.055, evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

Sec. 904.04(2)(b)1. (footnote added). "Application of the greater latitude rule, however, is not limited to any one prong" of the *Sullivan* analysis; rather, the greater latitude rule applies to, but does not supplant, each step of the *Sullivan* analysis. *Dorsey*, 379 Wis. 2d 386, ¶33; *Marinez*, 331 Wis. 2d 568, ¶20.

## B. Additional Pertinent Background

¶20    The first other act, described in a criminal complaint attached to the State's motion, occurred in June 2013 and involves Clucas's prior girlfriend, C.D. C.D. told police that on June 20, 2013, Clucas began yelling at her for having

---

[5] WISCONSIN STAT. § 968.075(1)(a) states as follows:

"Domestic abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has a child in common:

1. Intentional infliction of physical pain, physical injury or illness.

2. Intentional impairment of physical condition.

3. A violation of s. 940.225(1), (2) or (3).

4. A physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under subd. 1., 2. or 3.

It is not disputed that Clucas's alleged acts qualify as domestic abuse under this definition.

talked to his father the day before; threatened to kill her and twist her head around "like an owl"; told her, "I have never been so close to smashing your face, you ain't going to survive. I'll do your kids in too."; took her cell phone and threw it against the floor, breaking it; put her in a chokehold once for about two minutes and then again more tightly, dragging her across the floor; and pushed her away into a door. The State presented a judgment of conviction showing that Clucas pled guilty to battery and disorderly conduct, each with a domestic abuse surcharge, and no contest to criminal damage to property, all as misdemeanors. For ease of reading, this opinion will sometimes refer to this other act as "the chokehold and dragging across the floor" other act.

¶21 The second other act, described in a criminal complaint attached to the State's motion, occurred in July 2013 and also involves C.D. C.D. told police that she and Clucas had each drunk a pint of tequila or vodka on the evening of July 7 and that he later grabbed her arm and twisted it and pushed her across the room onto a couch, telling her that she was ruining his life. The State presented a judgment of conviction showing that Clucas pled guilty to battery with a domestic abuse surcharge and bail jumping, both as misdemeanors. For ease of reading, this opinion will sometimes refer to this other act as "the twisting arm and pushing" other act.

¶22 The third other act, described in an incident report attached to the State's motion, occurred in March 2019 and involves Clucas's then-wife A.B. According to the incident report, at approximately noon on March 31, 2019, police responded to Clucas and A.B.'s residence in response to a 911 call from the residence. When police arrived at the residence, Clucas was swaying and had a very strong odor of an intoxicant. A.B. told police the following. She and Clucas had a one and one-half year-old daughter, and she was five months pregnant.

10

Clucas is an alcoholic and has epilepsy, he gets very angry before and after he has seizures, and he had a seizure on March 27, 2019. The night of March 30, A.B. found an almost empty bottle of vodka in Clucas's bathroom and poured out what remained in the bottle in front of Clucas. Clucas pushed her, grabbed her arm, and choked her for one second while she was holding their daughter. Clucas left the residence, called the morning of March 31 and asked if he could come home, and returned to the residence. No charges were filed. For ease of reading, this opinion will sometimes refer to this other act as "the vodka and grabbing arm" other act.

¶23 The fourth other act, described in a criminal complaint attached to the State's motion, occurred in June 2020 and also involves A.B. On June 23, 2020, A.B. told police the following. She and Clucas were married but going through a divorce, and had two children. She worked days and he worked nights and was staying in a hotel, and they saw each other "only when the kids were involved." When she got home that day, Clucas was there with the children. She saw messages on his phone with a woman he was seeing, she confronted him about it, they argued and yelled at each other, and he called her names. Clucas threw a large, full, plastic water bottle at her from four feet away while she was holding their baby, and it hit her in the right collar bone area. She told Clucas she was calling the police and he left. The State presented a judgment of conviction showing that Clucas pled no contest to disorderly conduct as domestic abuse. For ease of reading this opinion will sometimes refer to this other act as "the throwing water bottle" other act.

¶24 In its briefing and argument in support of its motion, the State asserted that it offered the evidence of these four other acts "for the proper purposes of pattern of behavior, motive, intent, and absence of mistake or accident," and to buttress the victim's credibility in this case. The State argued

11

that evidence of the four other acts serves these purposes because each other act involves Clucas physically abusing his partner "when the domestic relationship was showing signs of deteriorating."

¶25 The circuit court expressed reservations about the State's proffered purposes. The court noted that motive and intent are not elements of the offense of disorderly conduct in the present case, and that the State's argument, in essence, is that the other acts show a propensity to be argumentative and abusive in relationships. Nevertheless, the court proceeded to address each other act under the second and third steps of the *Sullivan* analysis.

¶26 The circuit court did not allow the State to introduce evidence of the June 2013 other act, when Clucas threatened to kill C.D. and put her into a chokehold and dragged her across the floor almost seven years before the present case, because it is too remote in time and dissimilar to the facts of the present case. Specifically, Clucas's conduct then was significantly more violent and threatening than his conduct in the present case. The court noted that the June 2013 other act does not provide evidence relevant to showing why in the present case there might be some discord between divorcing parties that might surface during the exchange of their children, and Clucas's acts in June 2013 are not comparable in severity to the acts supporting the disorderly conduct charge in the present case.

¶27 The circuit court did not allow the State to introduce evidence of the July 2013 other act, when Clucas and C.D. had been drinking and he twisted her arm and pushed her onto the couch, because it is too remote in time and not necessary to prove the State's present case. The court also noted that Clucas's acts in the present case do not "reach the level of violence" of his other acts in either this July 2013 or the above-addressed June 2013 incidents.

12

¶28 The circuit court did not allow the State to introduce evidence of the March 2019 other act, when Clucas grabbed A.B.'s arm and then left the residence after she emptied his bottle of vodka. The court noted that the other act involved A.B. emptying Clucas's bottle of vodka, from which he had been drinking, in front of him, and questioned what purpose the State could have for introducing it given those circumstances. The court found that it is not relevant to the facts or charges in the present case and determined that, regardless of whatever relevance it might have, it would confuse the jury and its probative value is outweighed by the resulting prejudicial impact.

¶29 The circuit court allowed the State to introduce evidence of the June 2020 other act, when Clucas threw the water bottle at A.B., finding that it is relevant to show the context of the dispute in the present case, namely, the parties' relationship during a divorce, and Clucas's use of force to intimidate A.B. with the children present.

## C. Analysis

¶30 The State argues that the circuit court erroneously exercised its discretion because it did not follow the correct law, namely the proper interpretation of the greater latitude rule as stated in WIS. STAT. § 904.04(2)(b)1. Specifically, the State argues that the greater latitude rule in § 904.04(2)(b)1. applies only to the first two steps in the *Sullivan* analysis (proper purpose and relevancy), but that the rule supplants the third step (whether probative value outweighs unfair prejudice) and requires that the other-acts evidence be admitted unless the defendant shows that admitting the evidence would violate the defendant's fundamental due process rights. Because the State did not make this argument in its written submissions or oral argument in the circuit court, I could

13

decline to consider it further. *See State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 ("Arguments raised for the first time on appeal are generally deemed forfeited."). However, it also lacks merit because it is contrary to and unsupported by the law that binds this court.

¶31 First, the State's interpretation of the greater latitude rule in WIS. STAT. § 904.04(2)(b)1. is contrary to binding case law. As noted above, our supreme court expressly ruled that the greater latitude rule applies to all three *Sullivan* steps. *Dorsey*, 379 Wis. 2d 386, ¶33; *Marinez*, 331 Wis. 2d 568, ¶20. Indeed, the State expressly acknowledges this law elsewhere in its appellant's brief.

¶32 Second, the case law on which the State relies, *State v. Gee*, 2019 WI App 31, 388 Wis. 2d 68, 931 N.W.2d 287, does not support its interpretation. In that case, this court rejected a challenge to the constitutionality of a different statute, WIS. STAT. § 904.04(2)(b)2., which permits, in cases of first-degree sexual assault of a child, the admission of evidence regarding other convictions of the same charge to show that the defendant "acted in conformity" with the conduct in the previous convictions. *Gee*, 388 Wis. 2d 68, ¶¶2-3. In doing so, this court concluded that, based on the restricted application of the statute and the long-established application of the greater latitude rule to sexual assault cases, "we cannot conclude that the admission of other acts evidence to prove conduct is so extremely unfair that its admission violates fundamental conceptions of justice." *Id.*, ¶36 (internal quotation marks and quoted source omitted). The State does not explain how the analysis in that case applies to the interpretation of the statute at issue here, § 904.04(2)(b)1., or overrides the above-stated law that expressly negates the State's argument. In sum, this basis for challenging the circuit court's exercise of discretion fails.

¶33 The State also argues that the circuit court failed to properly apply the greater latitude rule to each step of its *Sullivan* analysis. However, the transcript of the motion hearing sufficiently establishes that the circuit court acknowledged the application of the greater latitude rule and considered it in its analysis of each of the three *Sullivan* steps.

¶34 I now address each *Sullivan* step in turn. Under the first step, the circuit court expressed concern that the State's basis for its proffered purposes, that Clucas "engages in abusive contact against his then girlfriend or wife when he feels that the relationship is showing signs of deterioration," boils down to "pattern of behavior" as a proxy for the impermissible purpose of character or propensity. I conclude that the State failed to meet its burden of showing that it seeks to introduce the evidence of the three other acts for a permissible purpose.

¶35 Our supreme court has underscored the basic principle that, to ensure that a jury does not convict based on evidence that a defendant has a certain character and acted consistent with that character, other-acts evidence must be offered for a purpose other than to show character and propensity. *See Dorsey*, 379 Wis. 2d 386, ¶33 ("Thus, for the types of cases enumerated under WIS. STAT. § 904.04(2)(b)1., circuit courts should admit evidence of other acts with greater latitude under the *Sullivan* analysis to facilitate its use *for a permissible purpose*.") (emphasis added). Indeed, the existence of a permissible purpose permeates all three steps of the *Sullivan* analysis, even in the context of the greater latitude rule. *See id.*, ¶28 n. 23 (rejecting concurrence's position that "evidence of 'similar acts' in sensitive crimes cases [is] admissible without requiring the State to establish a permissible purpose" and explaining why that position undermines the underlying permissible-purpose-related rule against the introduction of character evidence).

¶36    Our supreme court has also emphasized that, while the permissible purpose step is "not demanding," the proponent must identify a "relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct." *Marinez*, 331 Wis. 2d 568, ¶17. This court has likewise underscored the significance of this step:

> As the Wisconsin treatise on evidence explains, "[i]t is one thing to be solicitous toward the use of such proof [of other acts evidence for permissible purposes]; it is quite another to turn a blind eye toward its misuse as bad character/propensity evidence." 7 BLINKA, *supra* § 404.402 (4th ed. Supp. 2019); *see also* **State v. Plymesser**, 172 Wis. 2d 583, 592, 493 N.W.2d 367 (1992) (other acts evidence will not be admitted under § 904.04(2) "when the only inference that can be drawn from that evidence is that 'because a defendant committed prior act X, [the defendant] is therefore of such a character and disposition to commit present act Y'" (quoted source omitted)).

*State v. Stroik*, 2022 WI App 11, ¶48 n.23, 401 Wis. 2d 150, 972 N.W.2d 640.

¶37    Here, the State asserted that it sought to introduce other-acts evidence "for the purposes of showing a pattern of behavior by the defendant, the defendant's motive, intent, absence of mistake or accident, and to buttress the credibility of the victim." However, the record establishes that these asserted purposes were proxies for the impermissible purpose of showing Clucas's character and propensity for being an argumentative and abusive partner.

¶38    As the circuit court noted and the State conceded, intent is not an element of the presently charged offense of disorderly conduct, so intent and motive cannot be proper purposes here. *See **Dorsey***, 379 Wis. 2d 386, ¶48 (noting that motive is logically related to intent). The State points to no aspect of Clucas's alleged conduct in the present case that implicates mistake or accident. As to the

credibility of A.B., the circuit court noted that the cases cited by the State in which the victim's credibility was a proper purpose were cases involving acts of child sexual assault, which are difficult for juries to believe occur. The court countered that juries would not "be surprised that some disruption would occur in a situation in a pending divorce with the emotions involved and with the child exchange involved."

¶39 The State's assertion of a pattern of behavior purpose is not supported by the other-acts evidence it seeks to introduce. The State argues that the evidence as to all three rejected other acts shows Clucas and his partner having an argument, that having an argument is a sign of a deteriorating relationship, and that it is in "that moment" of an argument during signs of a deteriorating relationship that Clucas acts as he did in the present case. However, this is a subjective judgment not grounded in the other-acts evidence (except as to the most recent other act between Clucas and his then-wife when they were going through their divorce, which the circuit court allowed). Clucas points to no evidence, as to the 2013 other acts involving his prior girlfriend or the 2019 other act involving his then-wife, of the status of the relationship at those "moments." Indeed, the incident report for the 2019 other act indicates that A.B. told the police that Clucas's conduct then was related to his drinking and having had a seizure, not because there was a problem with their relationship. Rather, the evidence as recounted above shows only that Clucas is argumentative and abusive against his partner regardless of whether the relationship is deteriorating; in other words, Clucas has a character of being, and a propensity to be, argumentative and abusive in his relationships. That is not a permissible purpose.

¶40 Significantly, the State itself based all of its proffered purposes on the following proposition: "Throughout each of these prior acts and the present

17

case, the defendant has shown that he engages in abusive contact against his then girlfriend or wife when he feels that the relationship is showing signs of deterioration." Offering the other-acts evidence to show that Clucas is argumentative and abusive in his relationships is to show Clucas's character and propensity for being argumentative and abusive in his relationships. The only conceivable purpose of introducing this evidence is to ask the jury to make the inference that, because Clucas is argumentative and abusive with his partners, he is the type of person who was argumentative and abusive when his then-wife came to pick up their children in the present case. While it may be true that he has that character or propensity, it runs afoul of the reason for the permissible purpose requirement, which is to ensure that the jury convicts not because of that inference but because the State has proved beyond a reasonable doubt that Clucas did engage in disorderly conduct in the case before it. *See Marinez*, 331 Wis. 2d 568, ¶25 (a purpose is impermissible if it "depend[s] upon the forbidden inference of character as circumstantial evidence of conduct." (quoted source omitted)).

¶41 Even if the State is offering the other-acts evidence for a permissible purpose, the State fails to show that the circuit court erroneously exercised its discretion under the remaining steps of the *Sullivan* analysis. Under the second step, the circuit court considered that the other acts are not relevant to motive or intent, because intent is not an element of the disorderly conduct charge in the present case. As to the remaining proffered purposes, the court explained that the two 2013 other acts are not relevant because they are too remote (almost seven years before the present case) and are more threatening and violent than Clucas's alleged conduct in the present case, in circumstances unlike the child exchange in a divorce situation in the present case. For these reasons, the court also noted that these 2013 other acts are also not "essential" to prove the charge of disorderly

conduct in the present case. The court explained that the vodka and grabbing arm other act in March 2019 is not relevant because of the dissimilar circumstances relative to the disorderly conduct charge in the present case, noting that the other act involves apparent drinking by Clucas and A.B.'s interference with "his property," facts not present in the present case.[6] The July 2013 twisting arm and pushing other act also involved drinking by Clucas, a fact not present in the present case.

¶42 The State argues that the other acts are relevant under the second *Sullivan* step because they are similar acts of domestic abuse by Clucas. However, this argument paints with too broad a brush. It is, at best, an argument that Clucas is an abuser, underscoring that the evidence is being offered for an improper purpose. It also disregards the above-noted factual details that differentiate the other acts from those in the present case, including the level of violence (disproportionate to the conduct in the present case), the consumption of alcohol (of which there is no allegation in the present case), and that the conduct in the present case occurred during a child exchange in the midst of a divorce.

¶43 The State also argues that, as to the 2013 other acts, the circuit court improperly considered the remoteness in time of the other acts, the level of violence in the other acts, and whether the acts are necessary to prove the State's case under the second relevancy *Sullivan* step. However, Clucas points to no legal authority supporting the proposition that these considerations are improper,

---

[6] In contrast, the circuit court explained why the most recent other act (the throwing water bottle other act) is relevant to show context and Clucas's use of force under circumstances similar to those in the present case, namely during a divorce in the presence of the children.

only that in some cases these considerations support relevancy, rather than, as the circuit court explained here, negating relevancy.

¶44    Under the third step, the circuit court determined that the risk of unfair prejudice outweighs the probative value of the 2013 other acts, given their low or nonexistent probative value.  The court made the same determination as to the 2019 other act, and additionally determined that that other act (the vodka and grabbing arm other act) is so dissimilar in its facts and context compared to the present case that it would confuse the jury.  The State argues that the court did not properly follow the correct interpretation of the greater latitude statute when it made this determination, an argument that has already been rejected.

¶45    The State further argues that the circuit court improperly applied the greater latitude rule in WIS. STAT. § 904.04(2)(b)1. when it considered that the 2013 other acts involve a different victim.  However, the transcript of the court's ruling does not support this argument.  The court did not reference a different victim in its ruling regarding the June 2013 other act (chokehold and dragging across the floor).  The court did note that the July 2013 other act (arm twisting and pushing into the couch) involves a different victim, but the court immediately explained that the key considerations are that the act is too remote in time and is

neither factually similar to the act in the present case nor "essential to proving the State's case."[7]

¶46 Finally, the State argues that the circuit court erroneously exercised its discretion when it noted that, should it allow the State to offer at trial certain of the other-acts evidence excluded by the court pretrial, the State "would need to have witnesses with personal knowledge of these incidents if they want to bring it in." I do not consider this argument further because it is speculative and premature. That is, *if* the court allows the State to offer additional other-acts evidence, and *if* the State introduces the evidence through means other than witnesses with personal knowledge, and *if* Clucas objects, and *if* the court sustains the objection, *then* the State may pursue whatever argument it has as to the specific means it has used at that time.

¶47 In sum, the record supports the circuit court's exercise of discretion in denying the State's motion to introduce evidence of other acts as to the two 2013 incidents involving C.D. and the 2019 incident involving A.B. The transcript of the motion hearing as a whole establishes that the circuit court followed the three-step *Sullivan* analysis in the context of the greater latitude rule, examined the facts of record, and reached a result that a reasonable judge could reach.

---

[7] The transcript of the circuit court's remarks reads as follows: "I understand that simply being a different victim doesn't prohibit [admission of the other act] for that reason alone, but it is remote in time. It is similar in facts, and does not appear to be essential to proving the State's case." Given the context, the fact that the drinking and arm twisting and pushing in the July 2013 other act are not at issue in the present case, and the court's use of the connector "and," the last sentence makes sense only if it begins, "It is dissimilar in facts …." Regardless, these remarks show that the court did not improperly consider that the July 2013 other act involves a different victim from the victim in the present case.

## CONCLUSION

¶48      For the reasons discussed above, the State fails to show that the circuit court erroneously exercised its discretion in ruling on the State's motion to introduce other-acts evidence.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.