COURT OF APPEALS
DECISION
DATED AND FILED

November 8, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1692-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF697

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MARCUS TERRELL LAWSON,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Sheboygan County: KENT R. HOFFMANN, Judge. *Affirmed*.

        Before Gundrum, P.J., Grogan and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marcus Terrell Lawson appeals a judgment of conviction, following a jury trial, for victim intimidation, strangulation and suffocation, and taking and driving a vehicle without consent, all charges as a habitual criminal. On appeal, Lawson argues: the circuit court erroneously exercised its discretion when it admitted other-acts evidence; the evidence was insufficient to support the taking-and-driving-a-vehicle-without-consent conviction; and, we should reverse in the interest of justice. We affirm.

¶2 According to the criminal complaint, on August 25, 2018, Samantha[1] contacted police to report that Lawson, who had been staying with her, stole her vehicle. On September 17, Lawson returned to Samantha's apartment and assaulted her for reporting that he stole her vehicle. Lawson grabbed Samantha's neck and applied pressure, a struggle ensued, Samantha fell to the ground and tried to roll away, and then Lawson put his entire arm around Samantha's neck and choked her. Samantha had difficulty breathing. Lawson stopped, but then he "came over and started to choke her with [his] right hand for a second time and all she can remember next is waking up face down on her kitchen floor." Officers observed several bruises on both of Samantha's arms and an injury on her forehead.

¶3 As relevant to this appeal, the State charged Lawson with victim intimidation, strangulation and suffocation, and taking and driving a vehicle without consent, all charges as a habitual criminal. On the victim-intimidation and

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym when referring to the victim in this case.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

strangulation-and-suffocation charges, the State also invoked the domestic abuse repeater enhancer and the domestic abuse surcharge.

¶4	Prior to trial, the State moved to introduce other-acts evidence. The State planned to introduce testimony from Lawson's former girlfriend, Amy,[2] who reported incidents that were similar to Samantha's. The State offered that Amy would testify that, on one occasion, Lawson:

> broke into [Amy's] residence without her permission by kicking open a door and breaking a chain lock. Once inside, [Lawson] pushed [Amy] to the ground, placed his hands around [Amy's] neck and applied pressure. Eventually, [Lawson] stopped applying pressure to [Amy's] neck and [Amy] attempted to call 911. However, she was unsuccessful because [Lawson] grabbed her phone to prevent [Amy] from seeking assistance.

Amy would also testify that, on another occasion, she and Lawson:

> were in their bedroom when [Lawson] randomly and without being provoked became upset and proceeded to choke [Amy]. [Amy] lost consciousness the first time [Lawson] choked her and when she regained consciousness, [Amy] told the Defendant to stop. [Lawson] responded to [Amy] "I want you to lose consciousness" and proceeded to place his hands around [Amy's] neck and squeeze a second time. [Lawson] stopped cho[king] [Amy] the second time to slap [Amy] across her face with an open hand. Lastly, [Lawson] grab[bed] [Amy's] purse, and dr[ove] off in a minivan belong[ing] to the mother of [Amy], without getting permission to do so.

The State argued that Amy's testimony would help establish Lawson's intent and absence of mistake or accident. The State also reminded the court that, given the domestic abuse repeater and domestic abuse surcharge enhancements, the greater

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym for "Amy."

latitude rule applied to this case. *See* WIS. STAT. § 904.04(2)(b).[3] The greater latitude rule "permit[s] the admission of other, similar acts of domestic abuse with greater latitude." *State v. Dorsey*, 2018 WI 10, ¶31, 379 Wis. 2d 386, 906 N.W.2d 158.

¶5 Under the three-part *Sullivan*[4] framework, the circuit court admitted this other-acts evidence.[5] The court first found the State intended to offer this evidence for an acceptable purpose, namely to show intent and absence of mistake or accident. *See* WIS. STAT. § 904.04(2). The court then found that the other-acts evidence was relevant and probative in nearness in time, place, circumstances, and similarity of acts. *See* WIS. STAT. § 904.01. The court recognized that there were some differences between the conduct reported by Samantha and the conduct described by Amy, but the court found "there are sufficient similarities here which go to show the intent of the defendant, particularly during the strangulation/suffocation, as well as the intimidation aspects." The court also found that although the incidents with Amy occurred four and five-and-one-half years ago, respectively, they were not too remote in time to be relevant. Finally, the court concluded the probative value of the evidence substantially outweighed the danger

---

[3] WISCONSIN STAT. § 904.04(2)(b)1. provides, in relevant part:

> In a criminal proceeding alleging a violation … of domestic abuse, as defined in s. 968.075 (1) (a), or alleging an offense that, following a conviction, is subject to the surcharge in s. 973.055, evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

[4] *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

[5] The circuit court excluded a third incident between Amy and Lawson, concluding the incident was not similar enough to the situation involving Samantha.

of unfair prejudice. *See* WIS. STAT. § 904.03. The court reasoned that any potential prejudice could be limited through cautionary jury instructions.

¶6 A few days later, the State filed an amended information that removed the domestic abuse enhancements from the charges. Because the greater latitude rule no longer applied, the State moved the circuit court to reaffirm its admission of the other-acts evidence. At a subsequent motion hearing, the circuit court stated that although it had mentioned the greater latitude rule during the previous hearing, its decision was not based on the greater latitude rule. The court concluded the other-acts evidence continued to be admissible based on the court's previous *Sullivan* analysis.

¶7 On appeal, Lawson first argues the circuit court erred by admitting the other-acts evidence at trial. "The admission of evidence is subject to the circuit court's discretion," and "[w]e will not disturb the circuit court's decision to admit evidence unless the court erroneously exercised its discretion." *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448.

¶8 Wisconsin courts use a three-step framework when determining the admissibility of other-acts evidence. *See State v. Sullivan*, 216 Wis. 2d 768, 771-72, 576 N.W.2d 30 (1998). First, the evidence must be offered for a permissible purpose under WIS. STAT. § 904.04(2). *Sullivan*, 216 Wis. 2d at 772. Second, the evidence must be relevant under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. Third, the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *Id.* at 772-73; *see* WIS. STAT. § 904.03. The proponent of the other-acts evidence must show the evidence is being offered for a permissible purpose and is relevant; the opponent then must prove the probative value of the

evidence is not substantially outweighed by the danger of unfair prejudice. *State v. Marinez*, 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399.

¶9 Lawson faults the circuit court for not conducting an additional three-step *Sullivan* analysis once the greater latitude rule no longer applied. He also contends the evidence fails each prong of the *Sullivan* analysis.

¶10 We disagree and conclude the circuit court did not erroneously exercise its discretion by admitting the other-acts evidence into trial. First, the circuit court stated that it did not rely on the greater latitude rule when initially admitting the other-acts evidence. There was no need for the court to conduct an additional *Sullivan* analysis once the greater latitude rule no longer applied.

¶11 Further, Amy's proposed testimony satisfied all three prongs of the *Sullivan* analysis. The State offered this evidence for a permissible purpose because it provided evidence of Lawson's intent and lack of accident or mistake. *See* WIS. STAT. § 904.04(2)(a); *see also Sullivan*, 216 Wis. 2d at 772. This evidence was also relevant to show Lawson's intent and lack of accident or mistake because the incidents involving Amy were sufficiently similar to Samantha's reported experience. *See* WIS. STAT. § 904.01; *see also Sullivan*, 216 Wis. 2d at 772. Although Lawson argues the evidence was not relevant because the State did not specifically establish Lawson would be disputing intent or alleging accident or mistake at trial, Lawson overlooks that the State must prove each element of a crime whether or not the defendant disputes it. *See State v. Plymesser*, 172 Wis. 2d 583, 594-95, 493 N.W.2d 367 (1992). We also disagree with Lawson that the incidents were too dissimilar to be relevant or probative.

¶12 Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Sullivan*, 216 Wis. 2d at 772-73.

The circuit court provided a cautionary jury instruction regarding the proper use of the other-acts evidence. *See Marinez*, 331 Wis. 2d 568, ¶41 ("We presume that juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other acts evidence.").

¶13 Lawson argues the incidents were unduly prejudicial at trial because: the State improperly referenced Lawson's theft of Amy's mother's van in opening statements and no curative instruction was given for this error;[6] Amy began to reference a third incident that the circuit court had previously excluded;[7] and the cautionary jury instructions as a whole were confusing. Lawson, however, never objected to the State's opening statement, requested different jury instructions, or moved for a mistrial. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. In any event, the issue before this court is whether the circuit court erroneously exercised its discretion when deciding whether to admit the other-acts evidence based upon the offer of proof at the other-acts motion hearing. The court did not err in admitting Amy's testimony under WIS. STAT. § 904.04(2)(a) according to the *Sullivan* analysis.

---

[6] During opening statements, the prosecutor stated, in part:

> You will hear from [Amy] that in 2014 the defendant choked her to the point where she was unconscious and he told her that he wanted her to pass out and then choked her a second time. You will hear from [Amy] how the defendant then took her vehicle and fled the residence in her car without her consent.

The vehicle, however, belonged to Amy's mother.

[7] Lawson interrupted and requested a side bar; the court instructed the jury to disregard her testimony on this incident; and Lawson advised the court he was satisfied with the instruction.

¶14 Lawson next argues the evidence was insufficient to support his taking-and-driving-a-vehicle-without-consent conviction. When reviewing the sufficiency of the evidence to support a conviction, we "may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). The trier of fact is the sole arbiter of the credibility of witnesses and alone is charged with the duty of weighing the evidence. *Id.* at 506. "When more than one inference can reasonably be drawn from the evidence, the inference which supports the trier of fact's verdict must be the one followed on review unless the evidence is incredible as a matter of law." *See State v. Below*, 2011 WI App 64, ¶4, 333 Wis. 2d 690, 799 N.W.2d 95. "It is exclusively within the trier of fact's province to decide which evidence is worthy of belief, which is not, and to resolve any conflicts in the evidence." *Id.*

¶15 To prove the offense of taking and driving a vehicle without an owner's consent, the State needed to prove beyond a reasonable doubt that:

> First, the defendant intentionally took a vehicle without the consent of [Samantha]. Second, the defendant intentionally drove the vehicle without the consent of [Samantha]. Drive means to exercise physical control over the speed and direction of a vehicle while it is in motion. Third, the defendant knew that [Samantha] did not consent to taking and driving the vehicle.

*See* WIS JI—CRIMINAL 1464 (2019); *see also* WIS. STAT. § 943.23(2).

¶16 Here, Samantha testified at trial that Lawson, whom she dated for three months, was at her apartment on August 25, 2018. When she awoke from a nap, her car keys were missing and Lawson was gone. When she went outside, Samantha saw that her car was gone. Samantha reported the theft to Sheboygan

8

police. Suspecting that Lawson stole her car, Samantha confronted him, and Lawson admitted that he stole her vehicle and drove it to Milwaukee. He apologized to her. He even helped her try to find it. Both Samantha and Sheboygan police soon learned that the vehicle was found abandoned in Milwaukee after a hit-and-run crash. Samantha's testimony was not inherently incredible. *See Below*, 333 Wis. 2d 690, ¶4. Further, her testimony, if believed by the jury, satisfied all of the elements of the taking-and-driving-a-vehicle-without-consent crime. *See id.*

¶17 Finally, Lawson argues that his convictions should be reversed in the interest of justice because the real controversy was not fully tried. Lawson asserts that some not-objected-to errors combined with the erroneously admitted other-acts evidence and the insufficient taking-and-driving-a-vehicle-without-consent evidence caused a miscarriage of justice.

¶18 Under WIS. STAT. § 752.35, this court may order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]" We have already rejected Lawson's arguments regarding the other-acts evidence and sufficiency of the evidence on the taking-and-driving-a-vehicle-without-consent conviction. *See State v. Ferguson*, 2014 WI App 48, ¶33, 354 Wis. 2d 253, 847 N.W.2d 900 (denying interest-of-justice claims that rehash arguments that failed on other grounds). As for the other, not-objected-to purported errors, Lawson has failed to establish that this is an "exceptional case[]" warranting discretionary reversal. *See State v. Schutte*, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469 ("We exercise our authority to reverse in the interest of justice under § 752.35 sparingly and only in the most exceptional cases.").

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.